HANDY et ux, *Appellants,*
*v.*
BECK, *Respondent.*
(No. 76-1909, SC 25408)

581 P2d 68

Randolph Slocum, Roseburg, argued the cause for appellants. With him on the brief was Slocum, Poole & Hill, Roseburg.

Darryl E. Johnson, Roseburg, argued the cause and filed the brief for respondent.

Before Holman, Presiding Justice, Howell and Lent, Justices, and Joseph, Justice Pro Tempore.

JOSEPH, Justice Pro Tempore.

Holman, J., concurring opinion.

**JOSEPH, J., Pro Tempore.**

In this fraud action, plaintiffs appeal from a judgment entered for the defendant after a trial to the court.

In 1970, plaintiffs' predecessors in interest had a water well drilled by defendant, who operated a drilling business in an informal partnership with his sons. State regulations required that domestic water wells be cased to a depth of 18 feet and sealed. OAR 71-006; 71-008; 71.010. The defendant's sons, who did the actual work, mostly without participation by the defendant, installed only eight and one-half feet of casing and an insufficient amount of sealing. The regulations also required the driller of a well to file a copy of the drilling log with the State Engineer. The log was required to contain a statement of the amount of casing installed in the well. Former ORS 537.765 (2)(e).[1]

Defendant's log said that the well had 18 feet of casing and was properly sealed, but he knew at that time that the report was false because his sons had told him what they had actually done. Defendant and his sons denied making any express statement to the owners (Mr. and Mrs. Butcher) that the well complied with the state standards, but Mrs. Butcher testified that one of the sons told her the well was legally constructed. Neither the plaintiffs nor the Butchers knew about the filing of the false report or saw the log prior to the institution of this action.

In 1974, plaintiffs purchased the property; they used the well without any problems until April, 1975. In that month the road running in front of the property was oiled by the county. Some of the oil seeped into the well, damaging the house's plumbing and making the well unusable for more than a year.

---

[1]The drilling of the well and the filing in this case predated the reorganization of state water policy functions into the Department of Water Resources. Or Laws 1975, ch 581.

There was evidence that the oil would not have seeped into the well had the well been cased and sealed in compliance with state standards.

At the time plaintiffs purchased the property they were told by the Butchers that the water in the well was pure.[2] Plaintiffs testified that they would not have purchased the property had they known the well did not meet state standards.

The trial court issued a memorandum opinion. Although the parties had not made a request, the court saw fit in the circumstances to make findings and conclusions. There were two conclusions bearing on liability. The first was that plaintiffs were not entitled to recover because they failed to prove either that a misrepresentation had been made "directly" to them or that they had relied upon the defendant's misrepresentations. The second was that the water well log filing requirements "are neither designed nor intended as public notices" and any misrepresentations in such a report are therefore deemed to be made only to the state. Hoping to avoid the necessity for a retrial in the event of a reversal of the judgment, the court said that if the plaintiffs had prevailed they would not have been entitled to punitive damages but would have been entitled to $5,000 general damages and $2,250 special damages.

■ Of the conclusions on liability, the second was clearly erroneous. In 1970, ORS 537.765(1), (2)(e), which required the filing which defendant falsified, provided:

> "(1) The business or activity of constructing new wells or altering existing wells is declared to be a business or activity affecting the public welfare, health and safety. In order to enable the state to protect the welfare, health and safety of its citizens, any water well contractor licensed under ORS 535.747, person or public agency constructing or altering a well, shall keep a log of

---

[2] For reasons which are not apparent in the record, plaintiffs did not allege negligence, nor did they seek recovery from their vendors.

each well constructed or altered after August 3, 1955, and shall furnish a certified copy of such log to the State Engineer within 30 days after the completion of the construction or alteration. * * *

"(2) Each log required under subsection (1) shall be in a form prescribed * * * and shall show * * *

"(e) The kind and amount of the casing and where placed in the well * * *."

At that time ORS 536.040 provided:

"The records of the State Engineer are public records and shall remain on file in his office and be opened to the inspection of the public at all times during business hours. The records shall show in full all maps, profiles, and engineering data relating to the use of water, and certified copies thereof shall be admissible as evidence in all cases where the original would be admissible as evidence."[3]

We do not read the second quoted sentence as a limitation on the generality of the first but as a specific direction and rule of evidence for certain of the records. The statute establishes beyond doubt that a filed drilling log constitutes a public record. The only question then is whether the contents of that record could constitute a representation to anyone other than the State Engineer.

When the defendant filed the falsified drilling log, ORS 192.030 provided:

"All officers having custody of any state * * * records shall furnish proper and reasonable opportunities for inspection and examination of records and files in their respective offices, and reasonable facilities for making memoranda or abstracts therefrom * * * *to all persons having occasion to make examination of them for any lawful purpose.* * * *" (Emphasis supplied.)

The trial court's idea that a particular public record must be designed or intended as a public notice before a reader could rely on its contents imported an

---

[3] Current references in this and other statutes dealing with water resources to the Water Resources Director or the Department of Water Resources are a result of the 1975 reorganization. *See* n 1, *supra.*

[ 657 ]

undesirable, if not illogical, limitation on the public policy that public records "should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of the government are honestly, faithfully and competently performing their function as public servants" and so that members of the public may use such records for their own personal purposes. *MacEwan v. Holm,* 226 Or 27, 38, 359 P2d 413 (1961).

While the filing required under ORS 537.765 had a particular administrative purpose, as will appear in more detail below, any person having a lawful purpose was entitled to review that record and to rely on its having been lawfully prepared and filed. The purchase of residential property served by a well rather than a public water supply is certainly a transaction in which a prospective purchaser might review the record and be expected to rely upon the truth of its contents. That the filing served the clear function of assisting the public agency in its function of insuring that water wells comply with state requirements is no basis for saying that the record has no other function. Indeed, the adequacy of a water supply is likely to be a critical matter in most real estate transfers. *See Bodenhamer v. Patterson,* 278 Or 367, 563 P2d 1212 (1977).[4]

That error by itself, however, would not warrant a reversal of the judgment, because the other conclusion, *i.e.,* that no misrepresentation had been made by the defendant directly to the plaintiffs and that they had not relied on any misrepresentations, would, if it stands, support the judgment.

_____

[4]ORS 192.010 was repealed in 1973 (Or Laws 1973, ch 794, § 34), after defendant made the false filing and before the plaintiffs purchased the property. There is nothing in the Public Records Law enacted in 1973 (ORS 192.010 to 192.170; 192.410 to 192.500) that evidences a narrower public policy than that recognized in *MacEwan.* Indeed, the purpose of the 1973 legislation was to assure that the general rule is access and to encourage citizen examination of government records.

■ We have frequently said that to establish an action for fraud there must be proof that there was a material misrepresentation which was false, that it was made with knowledge of its falsity or ignorance of its truth and with the intention that it should be acted upon by the plaintiffs, and that the plaintiff acted in justifiable reliance and was injured as a consequence. *Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974). The defendant does not contest that he made a material misrepresentation which was false and that he knew it was false. There was substantial evidence that the plaintiffs suffered damages. Defendant contends both that a report made to the state could not have been a representation to the plaintiffs as a matter of law and that he could not therefore have intended that they or anyone else rely or act upon that report. Those contentions fail by reason of our preceding analysis.

Defendant's remaining contention is that the plaintiffs did not rely on the report. If plaintiffs' case had to rise or fall on their actually having seen the falsified report and having relied solely on its words, they could not prevail. The matter was by no means that simple. It is necessary to add to the facts previously stated additional elements in the case, beginning with the plaintiffs' complaint.

The charging parts of the amended complaint allege that the defendant, after completing construction of the well, "informed the Butchers that it was a sound, safe, legally constructed well producing potable water; that defendant filed a formal report of his drilling operations" as required by law, that the report was "false, fraudulent and deceitful," that "defendant intended, at the time of making said report, that the same be relied upon by Butchers and by their successors in title," that the Butchers and plaintiffs were ignorant of the falsity of the report and the representations concerning the lawfulness of the well's construction, and that they "relied upon the truth thereof

in their acts and dealings."[5] In short, the complaint alleged that defendant's spoken words to the predecessors in interest and his false filing together constituted a misrepresentation made with the intention that the Butchers and any successors in interest rely on it.

Mrs. Butcher testified that the defendant's sons told her that the well was legally constructed. The defendant acknowledged that that might have happened, but the sons testified that they had told her the truth about the casing and the sealing.

Plaintiffs called as a witness the state watermaster for Douglas County. The following colloquy took place:

"Q. BY MR. SLOCUM: Now, Mr. Youngquist, if the well driller in this particular situation had filed accurate information reflecting what you found when you went there at the time that you made your inspection could you tell the court what action, if any, would have been taken by the State of Oregon?

"A   Upon receipt of the water well report in Salem one of the hydrogeologists that reviewed these reports as they arrive would have contacted John T. Beck and requested that the proper casing, seal be installed normally within a 30-day period unless there's some extenuating circumstances.

"Q   Would the landowner also have been informed of this?

"A   Yes. Not by mail. I would have received a carbon copy of the letter and it would have been my obligation to

---

[5] At the close of the evidence plaintiffs moved to amend their complaint to substitute for the allegation of a false and fraudulent communication to the Butchers the words "that defendant fraudulently failed to communicate said defects in said well to the Butchers." The trial court declined to allow the amendment on the grounds that the proffered substitute language was just another way of saying the same thing that had already been pleaded. The trial court said, in part:

"* * * It looks to me like if you allege that they have made false and fraudulent misrepresentation then inherent in that is the truth of the matter wasn't communicated, that's why it's false and fraudulent and a misrepresentation, so to say the truth was not communicated is just another way of saying the same thing."

contact the landowner explaining why the well driller would have been returning.

"Q Would you have done this?

"A Yes."

We conclude that the record would have supported findings that plaintiffs and their vendors did not know the illegal condition of the well because the defendant concealed from them what he had created by failure to conform to the state standards, that a drilling report showing the defective installation would have been communicated to the Butchers and that defendant knew or should have known successors in interest to the Butchers would rely upon the apparent lawfulness of the installation and would have no practical means of determining the truth. The trial judge, however, in addition to concluding that the filed log was not a public record amounting to a notice, concluded that in the absence of any misrepresentation made by the defendant directly to the plaintiffs, they could not recover.

Three Oregon cases were cited by the trial court as preventing recovery here. The first is *Menefee v. Blitz,* 181 Or 100, 179 P2d 550 (1947). The appeal was from a judgment in favor of the plaintiff on a claim that he had been induced by fraudulent representations made by Mr. Blitz concerning an oil well drilling project. In attempting to raise money to continue the venture, Mr. Blitz told the plaintiff's father in great detail about the history and prospects for a well then in progress. Plaintiff was not present when any of the representations were made, and this court concluded that the representations were intended only for the elder Mr. Menefee and not for the plaintiff. Plaintiff's father made the communications to him, but it was not clear what the father had in fact told the son. The case has been cited as standing for the proposition that there can be no recovery for fraud in the absence of a direct communication of the misrepresentation to the party claiming reliance. The defendant there did *not* contend that the plaintiff had no right to rely on what

Mr. Blitz said to the plaintiff's father. The defendant claimed that the fraudulent statements were not transmitted, and this court agreed that there was insufficient evidence of such a transmission. The opinion suggests that had there been stronger evidence that the representations by Mr. Blitz to the elder Mr. Menefee were communicated in substance as originally made, there might have been a basis to sustain the plaintiff's judgment. The point at issue in *Menefee* is not in issue here.

*Rickli v. Autzen,* 270 Or 1, 526 P2d 547 (1974), was an action for restitution. The defendants had made misrepresentations to two individuals to induce them to purchase stock in a corporation. Those individuals in turn contacted the plaintiffs and repeated the misrepresentations to obtain from them a loan of the money to make the down payment on the stock. The defendants had demurred to a complaint which had merely alleged that the defendants were unjustly enriched by getting the benefit of the money furnished by the plaintiffs. This court sustained the demurrer saying, after referring to Dean Keaton's article. *The Ambit of a Fraudulent Representor's Responsibility,* 17 Tex L Rev 1 (1938), and 3 Restatement of the Law of Torts, § 533:

> "Whether the liberal or the more restrictive view of the scope of the misrepresentor's responsibility is taken, it is apparent that plaintiffs have not alleged facts which are sufficient to make defendants responsible to them for their misrepresentations. To take the more liberal view, there is no showing that the representations were made by defendants to plaintiffs or that they were made under such circumstances that the plaintiffs were entitled to believe that Dutton and Scheidt had been authorized by defendants to communicate the representations to them." 270 Or at 5.

The judgment on the demurrer was affirmed. The instant case is readily distinguishable. The plaintiffs' allegations here, as detailed above, sufficiently pleaded that the filing of the false report together with oral representations made to the Butchers were

fraudulent as to successors in interest who would be likely to rely upon the apparent state of facts.

The most recent case is *Carpenter v. Egli,* 272 Or 337, 536 P2d 1236 (1975). The purchasers of a home brought an action against their vendor, claiming that they had been damaged because the vendor had misrepresented the size of the lot. What was claimed as a misrepresentation was that the vendor told a realtor that the lot was 80 feet by 100 feet instead of the actual size of 50 feet by 100 feet, and the realtor had in turn conveyed that information to the plaintiffs, who relied upon it in making their purchase. Plaintiffs recovered judgment. On appeal that was affirmed. We stated:

> "* * * In *Rickli v. Autzen* we observed that in *Menefee v. Blitz,* the rule was stated that in order for C to be able to maintain an action, C must prove that A intended that B would communicate the misrepresentation to C. We commented in *Rickli* that the rule has been expressed more broadly; however we did not have to determine which version of the rule we would adopt."

We concluded that the jury was entitled to find that the defendant had intended that the realtor give the misleading information to prospective buyers. Further, we said that in the circumstances the jury was entitled to find that the plaintiff had a right to rely and had in fact relied upon the misrepresentation.

Those cases did not justify the trial court in deciding this case on the "general rule" that to be actionable a representation must have been made by the defendant directly to the plaintiffs. Instead, we conclude that the rule applicable under the circumstances of this case may be derived from Restatement (Second) of Torts § 536 (1977):

> "If a statute requires information to be furnished, filed, recorded or published for the protection of a particular class of persons, one who makes a fraudulent misrepresentation in so doing is subject to liability to the

[ 663 ]

persons for pecuniary loss suffered through their justifiable reliance upon the misrepresentation in a transaction of the kind in which the statute is intended to protect them."

Comment c to that section contains the following apt language:

"* * * The rule may be expressed by saying that when a statute requires information to be furnished, filed, recorded or published for the protection of a particular class of persons in particular kinds of transactions, one who complies with the requirement always has reason to expect that the information will reach the class of persons and influence their conduct."[6]

---

[6]Section 536 is supposedly only a special application of the general rule stated in Section 531:

"One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced."

That section has an appended Caveat:

"The Institute expresses no opinion on whether the liability of the maker of the fraudulent representation may extend beyond the rule stated in this Section to other persons or other types of transactions, if reliance upon the representation in acting or in refraining from action may reasonably be foreseen."

With respect to the Caveat, Comment h says:

"The area of the law covered by this Section has been undergoing change in the direction of liberalizing the rules as to the expected reliance. This Section is not intended to foreclose or discourage further developments. The Caveat therefore leaves open the question of whether there may be cases in addition to those covered by the rule stated in this Section, in which there is no special reason to expect that a given person or a class of persons will take action or refrain from it in reliance upon the fraudulent representation, but it is foreseeable that they may do so, and the circumstances are such that the maker of the presentation [sic] may be held subject to liability. On those cases the Institute takes no position."

Nonetheless, Section 536 does seem to take a position on foreseeability by its reference to "a transaction of the kind in which the statute is intended to protect them."

The old Oregon case of *Wheelwright v. Vanderbilt,* 69 Or 326, 138 P 857 (1914), contains a suggestion of the Section 531 rule *with* the foreseeability element. The claim there was that the defendant, a director of a corporation, was liable in deceit for misrepresentations made by the defendant and

■ Section 536 by its terms would have such cases depend upon proof that the content of the false filing had been communicated to the complainant and that the misrepresentation had been relied on in fact. That is too narrow a rule where the actor has prevented the correction of the illegal condition and a member of the protected class has been injured as a consequence. The determination of the "class" intended to be protected will ordinarily be sufficiently clear that it becomes a matter of law. The reasons for the state having standards relating to wells are patent, and they include the protection of all those whose health and well being may be affected by contamination or failure of a water supply. Plaintiffs are clearly in that general class. Moreover, they are in the subclass of those whose interests reasonably may be expected to be harmed by a false filing, *i.e.,* those who purchase property in the belief that they are protected against the loss of a potable water supply.

■ The trial court found there was insufficient evidence to support a conclusion that the plaintiffs had relied on a misrepresentation conveyed to them. We believe that to require that proof was erroneous. The defendant had both failed to make the required disclosure in the filing and affirmatively concealed from the Butchers the truth about the well, thus creating a condition which injured the plaintiffs. In the circumstances their right to recover was not dependent on a misrepresentation being conveyed to them.

---

other directors. Because the plaintiff on becoming suspicious had procured his own investigation of the facts, he was held not to have relied. Mr. Justice Bean stated the law to be:

"* * * Where a party complains of false representations, whereby he was caused to suffer damage in a transaction with some third person, it devolves upon him to show expressly that the alleged wrongdoer intended, or, what is the same thing, that he may reasonably be supposed under the circumstances to have intended, that the plaintiff should act upon the misrepresentations; and it is not enough to prove that the same were made with knowledge of their falsity * * *." 69 Or at 328.

The judgment of the trial court is reversed and the case remanded for a new trial on principles consistent with this opinion.

Reversed and remanded for a new trial.

**HOLMAN, J.,** concurring.

The purpose of the regulation requiring a report to the state engineer is to make sure that wells are drilled in conformance with other regulations of the state engineer which are adopted for the protection of the water supply of persons who might subsequently dwell upon the land. Had a true report been filed by defendant, the state engineer would have required him to comply with the regulations concerning the casing of the well and would have informed the owners of the property of his lack of compliance.

As a result, had the report not been falsified, the failure to comply with the regulations concerning the casing of the well would have been rectified, the well would not have been contaminated, and plaintiffs would not have suffered their damage. Plaintiffs were within the class of persons sought to be protected by the regulation requiring the filing of the report and were damaged as the result of defendant's falsification.

Plaintiffs' complaint alleged all that was necessary for recovery—the failure to comply with the regulations concerning the casing of the well, the filing of the false report, the contamination of the well as the result of the failure to case the well, and resultant damages.