Argued December 6, 1978, reversed and remanded April 3,
petition for rehearing denied May 22, 1979

# AMERICAN NATIONAL BANK
## OF DENVER, *Respondent,*
### *v.*
## TONKIN, *Appellant.*
## (No. A7603 03234, SC 25467)
592 P2d 1008

Don H. Marmaduke, Portland, argued the cause for
appellant. With him on the briefs were Barbee B.
Lyon, John E. Frohnmayer, and Tonkon, Torp &
Galen, Portland.

[73]

William B. Crowe, Portland, argued the cause for respondent. With him on the brief were Clifford N. Carlsen, Jr., and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Denecke, Chief Justice, and Tongue, Bryson, and Linde, Justices.

BRYSON, J.

## BRYSON, J.

Plaintiff brought this action against defendant, guarantor of a loan, based on a written guaranty agreement. Defendant guarantor alleged several affirmative defenses. Trial was had before a jury, but the trial court held that plaintiff was entitled to judgment as a matter of law.[1]

Defendant's first two assignments of error involve defendant's affirmative defense that execution of the guaranty agreement was induced by misrepresentations on the part of plaintiff ("the bank").

Plaintiff's complaint alleged:

"* * * * *

"II

"On or about January 12, 1973, plaintiff loaned to Baron Investments, Inc., the sum of $300,000 and Baron Investments, Inc., gave to plaintiff its promissory note, whereby it promised to pay plaintiff $300,000 with interest. During the year 1973 Baron Investments, Inc., repaid to plaintiff the sum of $5,494.25 on the principal of said loan.

"III

"On or about January 12, 1974, plaintiff renewed said loan and Baron Investments, Inc., gave to plaintiff its promissory note, wherein Baron Investments, Inc., promised to pay plaintiff $294,505.75, with interest thereon at the rate of 12 percent per annum

---

[1] When both parties had rested, plaintiff moved for a directed verdict on each of the affirmative defenses. The trial judge ruled that he would direct a verdict for plaintiff "with respect to all aspects of the case," but would, if requested by defendant, submit to the jury three of the affirmative defenses pursuant to ORS 18.140(2). Defendant so requested, and the trial court submitted the case to the jury in the form of three separate interrogatories, each of which required a finding of fact related to one of those affirmative defenses, and also a general verdict form. The jury's general verdict was for plaintiff, but the answer to one of the interrogatories was inconsistent with that verdict. It also developed, when the jury was polled, that the answer to another interrogatory — an answer consistent with the general verdict — did not have the assent of nine jurors as required by ORS 17.355(1). The trial judge then dismissed the jury and, after motions by both parties, entered judgment for plaintiff in accordance with his prior ruling that plaintiff was entitled to judgment as a matter of law.

[75]

unless Baron Investments, Inc., defaulted in the payment of the principal and interest, in which event the loan was to draw interest at the rate of 15 percent per annum from the date of such default. A copy of said note is attached hereto, marked Exhibit A, and by reference incorporated herein. Baron Investments, Inc., defaulted on said note on July 11, 1974. * * *.

"IV

"On or about January 7, 1973, defendant agreed to guarantee payment of the indebtedness of Baron Investments, Inc., to plaintiff. A copy of the guarantee agreement of defendant is attached hereto, marked Exhibit B, and by reference incorporated herein.
"* * * * *."

Defendant's second separate affirmative defense alleged that

"I

"On or about January, 1973 plaintiff requested defendant to guarantee a loan by plaintiff to Baron Investments, Inc. Plaintiff represented to defendant that the loan would be for a period of two and one-half years at 9 percent interest per annum.

"II

"The representations made by plaintiff were false in that plaintiff intended to write and did write the note for a period of less than two and one-half years, and plaintiff made demand on the guaranty in less than two and one-half years from the date of the loan.

"III

"Plaintiff made its representations knowing they were false or with reckless disregard of their truth or falsity. Plaintiff's representations were made with the intent that defendant rely thereon.

"IV

"Defendant relied upon plaintiff's representation that the note would be for two and one-half years and that it would not be called prior to two and one-half years and on the basis of those representations agreed to execute the guaranty.
"* * * * *."

[76]

Defendant contends that at the bank's instance he was told that the loan which he agreed to guarantee was to be a two and one-half year term loan when in fact the bank intended to and did write the loan for a lesser period and attempted to collect from the principal debtor before the two and one-half years had expired.

The evidence discloses that Mayer Baron, defendant's brother-in-law, applied to the bank in late 1972 for a $300,000 loan to Baron Investments, Inc., a corporation which he owned. The loan was to be secured by the assignment to the bank of a one-half interest in a note and trust deed which required the payor, Gold Run, Ltd., to make substantial periodic payments. The bank's share of those payments, under the assignment, would be more than enough to retire the Baron loan within two and one-half years. Notwithstanding these facts, the bank told Baron that it would require an adequate guaranty before it would make the loan, and Baron suggested defendant as a possible guarantor.

The bank investigated defendant's financial standing and agreed to make the loan on the condition that defendant would sign as guarantor. The bank is located in Denver, Colorado, and defendant resides in Portland, Oregon. There was no direct communication between plaintiff and defendant prior to the execution of the guaranty agreement. Baron informed defendant about the status and terms of the proposed loan, brought the guaranty agreement to defendant for his signature, and arranged for delivery of defendant's executed guaranty agreement to the bank. On January 9, 1973, after the bank had received defendant's executed guaranty agreement, plaintiff wrote to defendant for the first time.

Before evaluating the evidence we must consider the scope of our review on this aspect of the case. The jury was asked, by special interrogatory:

[77]

> "Did plaintiff fraudulently represent to defendant that the loan would be for a period of 2-1/2 years at 9 percent interest per annum?"

The jury answered "Yes."

Although the jury was asked only if the bank "fraudulently represented" certain information to defendant, it was clearly instructed on the defendant's burden of proof as to fraud and that in order to answer this interrogatory in the affirmative it must find the existence of each of nine separate elements of fraud: that plaintiff made the statement; that it was false; that it was material; that plaintiff either knew it was false or made it recklessly without regard to its truth or falsity; that plaintiff intended defendant would sign the guaranty as a result of the statement; that defendant did not know it was false; that defendant relied on its truth when he signed the guaranty; that defendant had a right to rely on the truth of the statement; and that defendant suffered loss by reason of having signed the guaranty in reliance on the statement. Under these circumstances, the affirmative answer to this interrogatory is inconsistent with a general verdict for plaintiff.

A special finding of fact cannot be disregarded, but controls the general verdict. ORS 17.420 provides:

> "When a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

On review, then, we must consider the evidence on this issue in the light most favorable to defendant and sustain the plaintiff's judgment only if there is no substantial evidence to support the jury's special finding.

Baron did not testify. The bank officer who dealt with Baron during negotiations for the loan, when asked what were the terms of the loan as agreed to between the bank and Baron prior to closing, testified, "It was for a loan in the amount of $300,000 for 2-1/2

[78]

years, at a 9% rate plus a 1% fee."[2] To corroborate this testimony, defendant introduced internal memoranda prepared by plaintiff's personnel during the application period which referred to a "2-1/2 year term loan for $300,000." The same bank officer testified that he expected Baron to communicate the terms of the proposed loan to defendant. This is further confirmed by the bank's letter of January 9, 1973, to defendant which reads in part as follows:

"Dear Mr. Tonkin:

*As Mayer Baron has probably already told you,* we have approved the loan request for $300,000 in regard to the property in Colorado. One of the deciding factors in this action was the strength of your personal guaranty on the loan. Since the loan was projected to run for a period of 2-1/2 years, it is possible your guaranty will be in effect for that period of time. [Defendant's guarantee agreement was executed January 7, 1973.] * * *." (Emphasis added.)

Defendant testified that Baron told him, before he agreed to sign the guaranty, that the loan would be "a 2-1/2 year loan at 9% interest for a total amount of $300,000."

When the loan had been approved, on January 5, 1973, the bank wrote a letter to Baron with the following information:

"As discussed on the phone this morning, we have approved your loan request and this letter will serve as our commitment with the following conditions:

| | |
|---|---|
| Amount: | $300,000 |
| Rate: | 9% plus a 1%) loan fee |
| Term: | 2-1/2 years, notes to be written for 1 year, renewable, with interest quarterly. |
| Collateral: | Assignment of a 1/2 interest and [sic] a note and deed of trust from Gold Run Ltd. Release and re-assignment to American National Bank to be executed by the Old National Bank, Spokane, Washington. |

---

[2] The record shows that the original note drawing interest at 9 percent was changed by a renewal note of January 12, 1974, drawing interest at 12 percent and in the event of default, at 15 percent per annum which Baron executed, all without notice to defendant.

| Guarantors: | Mayor Baron and Marvin Tonkin |
| Repayment: | Interest quarterly, principal to be reduced according to the terms of the note and deed of trust from Gold Run, Ltd." |

There is nothing in the record to show that defendant received a copy of this letter.

After the bank had received the guaranty agreement signed by defendant, but before it had acted on that guaranty by closing the loan and disbursing the money, it wrote the January 9, 1973, letter to defendant describing the loan as "projected to run for a period of 2-1/2 years." Defendant was requested to sign and return a copy of the letter to indicate his approval of the "terms and conditions as outlined above." Defendant returned a signed copy of the letter to plaintiff.

The note as prepared by the bank and executed on Baron's behalf[3] did not provide for payment at the end of two and one-half years, but for payment "on demand, or if no demand is made, then three hundred and sixty five days after date." After the note was executed the bank sent copies to Baron with a cover letter stating, in part:

"\* \* \* The note is written to tie into our commitment to you, and is written with the optional maturity of demand or one year. The demand option is not exercised unless there is non-performance. We also have committed to renewals up to a term of 2-1/2 years, as long as the debt servicing program is adhered to."

The bank did not send a copy of this letter to defendant.

In response to this letter, the general manager of Baron Investments wrote to the bank asking, at Baron's request, for a letter "confirming the terms of the loan," including an understanding that principal and interest were to be paid out of cash payments on the Gold Run note, and that "there is no additional cash flow required on the part of Baron Investments."

---

[3] The note was not signed by Baron himself, who lived in Seattle, but by his son, acting under a power of attorney given for that purpose.

A copy of this letter was sent to defendant. The bank did not respond.

Defendant testified that he consented to sign the guaranty agreement only because the loan, as Baron told him, was to be for a term of two and one-half years and that he would not have agreed to act as guarantor had he known that the note was to be made payable on demand and subject, therefore, to being called before the end of that period. Defendant contends that the jury could find, from the evidence described, that the terms of the loan were misrepresented to Baron with the intention or expectation that Baron would repeat those misleading statements to defendant in order to obtain his signature on the guaranty agreement. Indeed, the bank's letter of January 9 to defendant contemplates that Baron would talk to the defendant regarding the loan. Also, the bank officer testified that he expected Baron to communicate the terms of the loan to defendant.

In *Carpenter v. Egli,* 272 Or 337, 536 P2d 1236 (1975), an action for damages for misrepresentation, we held that the case was properly submitted to the jury where there was evidence that defendant, the seller of real property, had knowingly given his realtor false information about the size of the lot because the jury could find that he intended that this information would be passed on to prospective buyers such as the plaintiffs. We noted that it was not necessary under the circumstances to choose among various formulations, discussed in our prior cases, of the applicable rule. To the same effect, relying on *Carpenter, see Handy v. Beck,* 282 Or 653, 663, 581 P2d 68 (1978).

The rule was stated as follows in *Menefee v. Blitz,* 181 Or 100, 124-25, 179 P2d 550 (1947):

"'It is a general rule that a person cannot complain of false representations, for the purpose of maintaining an action of deceit, unless the representations were either made directly to him, with the intention that they should be acted upon by him, or

made to another person with the intention that they should be communicated to him and acted upon by him.'" (Quoting from *Henry v. Dennis,* 95 Me 24, 49 A 58 (1901).)

In *Menefee* we held that evidence of representations made by the defendant to a third party should not have been admitted when there was no evidence that they had ever been communicated to the plaintiff. Here, however, there was evidence that the bank's unqualified representation that it would make a "2-1/2 year loan" was transmitted to defendant and he testified that he relied on it.

In *Rickli v. Autzen,* 270 Or 1, 526 P2d 547 (1974), we repeated the above quotation from *Menefee* and noted that a similar statement of the rule regarding representations made through third persons is found in 3 Restatement 77, Torts § 533 (1938):

"The maker of a fraudulent misrepresentation in a business transaction is subject to liability to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person for the purpose of having him repeat its terms or communicate its substance to the other in order to influence his conduct in a particular transaction or type of transaction."

We also observed that a broader statement of the rule has been formulated by Dean Keeton:

"* * * It seems that the actual results of the cases can best be explained by the following rules: A fraudulent representor should be responsible to anyone to whom the statement is directly communicated, provided the latter is justified in regarding the statement as addressed to himself; a fraudulent representor should be responsible to anyone who receives the statement through a third person, provided the latter had the *actual* or *apparent* authority to communicate it * * *." Keeton, *The Ambit of a Fraudulent Representor's Responsibility,* 17 Tex L Rev 1, 11 (1938). (Emphasis in original.)

In *Rickli* we held that even the broader or more liberal formulation of the rule would not apply to hold liable defendants who allegedly made false representations to third parties to induce them to buy stock when those third parties repeated the representations to plaintiffs in order to induce them to loan the money necessary for the purchase. The case was decided upon the allegations of the complaint, which did not allege either that defendants knew or intended that the representations would be transmitted to prospective lenders, or any circumstances which would tend to show that plaintiffs were entitled to believe that defendants had authorized the prospective purchasers to communicate the representations to them. In the present case, however, the bank's officer testified that he expected Baron to inform defendant of the terms upon which Baron and the bank had agreed. The jury could, moreover, find that the bank intended that defendant act on the information which Baron communicated to him because the bank left entirely to Baron the task of arranging with defendant for the guaranty of the loan.

The trial judge apparently concluded that the evidence would not support a finding that the bank told Baron, intending that he tell defendant, that defendant would not be required to respond under his guaranty for a period of two and one-half years. His memorandum opinion states that nothing in the correspondence which we have excerpted above

"* * * would allow a reasonable inference amounting to clear and convincing evidence that the loan would run for 2 1/2 years irrespective of default, or that defendant Tonkin would not be called upon to make good a default before 2 1/2 years. Nothing in any other testimony or evidence would support such an inference."

We conclude that the recitation in the court's memorandum letter is not correct and that the jury could reasonably infer that the original understanding between Baron and the bank was that neither Baron's

liability nor that of defendant as guarantor would accrue for two and one-half years.

In commercial loans, such as the loan in the case at bar, it is not uncommon for the parties to contract for a term loan, both as to principal and interest, rather than the usual contemplated monthly installment payments. When a loan is described in the parties' agreement as being for a particular term, with no specification that installment payments must be made during that period, it is permissible to conclude that they have arranged for a loan which is to be repaid in its entirety at the end of the term. The jury might well have concluded that the bank told Baron it would make such a term loan, or that it told him that the loan would be for two and one-half years without specifying that periodic payments would be required. Under the facts of this case, the jury could have found that the bank, as lender, expected to receive adequate periodic payments on Baron's loan from the secured note which was assigned to it as security with the trust deed, and that none of the documentary evidence demonstrated any mention of periodic payments as a condition of renewal of the note until the bank's letter to Baron, written after the note and guaranty agreement were signed and the money disbursed. This letter stated the bank's commitment to renewals to be for the full loan period "as long as the debt servicing program is adhered to."

Baron's letter to the bank, after the loan had been closed, requested a confirmation of his understanding that Baron Investments would not be required to make periodic payments during the term of the loan. This letter, although of course it is not binding on the bank, does corroborate the other evidence that the original loan negotiations had contemplated a term loan rather than one requiring periodic payments.

The bank's letter of January 5 informing Baron that the loan had been approved also informed Baron that the bank intended to use one-year renewable

notes. There was, however, no mention in that letter of the fact that the notes were to be made payable on demand. Arguably, the provision in that letter that interest was to be paid quarterly and that repayment of the principal was to be "according to the terms of" the Gold Run note and trust deed may have informed Baron that the bank expected him to be responsible for periodic payments. That provision is ambiguous, and the jury was not required to find that this letter adequately informed Baron that the loan as approved was not the term loan, according to other evidence. The jury must have believed the evidence as to the two and one-half year term loan which Baron had previously negotiated with the bank's officer.

The question on appeal is whether there was sufficient evidence under the court's instructions to support the jury's findings. The jury was not required to find that the bank had a right to assume that the information in the January 5 letter, whatever it conveyed to Baron, was relayed to defendant before he executed the guarantee. The letter is dated January 5; the guaranty agreement was executed on January 7. Nothing in the evidence compelled a finding that the letter written in Denver on January 5 had reached Baron in Seattle on or prior to January 7 so he could advise defendant or that the bank was entitled to assume that Tonkin had the information in the letter before he signed the guaranty agreement in Portland on that date.

Although the jury was certainly not required by the evidence to find that the bank had told Baron, without qualification, that the loan would be for a two and one-half year term, or that defendant was entitled to rely on that representation when transmitted to him, we conclude that the evidence was sufficient to permit those findings so made by the jury and that it was error to grant judgment for plaintiff notwithstanding the jury's special finding on this issue.

[85]

Because there was evidence to support the jury's finding, the trial court was required by the statute to give judgment according to the jury's response to the special interrogatory pursuant to ORS 17.420. Therefore, the appropriate judgment is for defendant on the ground that the guaranty agreement upon which the bank's action is based was procured by the bank's misrepresentations. Because of this conclusion, it is not necessary to consider defendant's further assignments of error.

The trial court's judgment is reversed and remanded for entry of judgment in accordance with the jury's special finding.