ERNST & YOUNG, L.L.P., Petitioner,

v.

PACIFIC MUTUAL LIFE
INSURANCE COMPANY,
Respondent.

No. 00–0232.

Supreme Court of Texas.

Argued Jan. 3, 2001.

Decided June 21, 2001.

Ralph I. Miller, Collyn A. Peddie, Weil Gotshal & Manges, Dallas, J. Andrew Heaton, Asst. Gen. Counsel, Washington, DC, for Petitioner.

Bruce A. Budner, Bruce A. Budner & Associates, Dallas, Stewart M. Weltman, Stewart M. Waltman & Associates, Chicago, IL, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

In this case, we must decide the scope of an accounting firm's liability for making fraudulent misrepresentations in an audit report. Specifically, we consider whether the intent-to-induce-reliance element of a fraud claim requires a direct relationship between the alleged fraudfeasor and a specific known person—commonly referred to in this context as "privity." The court of appeals followed the *Restatement (Second) of Torts* section 531, which does not require privity and recognizes liability when an alleged fraudfeasor "has reason to expect" a person's or class of persons' reliance on the misrepresentations. 10 S.W.3d 798, 804–05. Concluding that the plaintiff-investor raised a fact issue on this element, the court of appeals reversed the trial court's summary judgment for the

accounting firm. *Id.* at 810. Although we need not decide whether to adopt *Restatement* section 531, we conclude that section 531's reason-to-expect standard is consistent with our fraud jurisprudence. But we agree with the accounting firm that the court of appeals misapplied that standard in this case. We hold that the accounting firm established as a matter of law that it had no reason to expect the investor's reliance on the audit report in the transaction at issue, and because the investor's remaining claims were premised on the fraud claim the trial court properly granted summary judgment in the accounting firm's favor. Accordingly, we reverse the court of appeals' judgment and render judgment that the investor take nothing.

### I. Background

At the center of this litigation is a series of notes that InterFirst Corporation issued in 1982 and Pacific Mutual Life Insurance Company purchased in 1987 after InterFirst merged with RepublicBank Corporation. Pacific claims that in purchasing the InterFirst notes it relied on an Ernst & Young[1] audit report that confirmed RepublicBank's financial strength. When RepublicBank filed for bankruptcy shortly after the merger and the InterFirst notes became virtually worthless, Pacific sued Ernst & Young for fraudulent misrepresentation. Before addressing Ernst & Young's potential fraud liability, we review the underlying transaction and the context in which the alleged misrepresentations were made.

In 1982, InterFirst issued a series of notes scheduled to mature in 1989. By 1986, InterFirst was in financial difficulty and it began to negotiate a merger with RepublicBank, which appeared at the time to be a stronger, more profitable bank. Ernst & Young audited RepublicBank's financial statements for the year ending December 31, 1986, and gave an unqualified opinion that those statements fairly presented the bank's financial position. RepublicBank incorporated Ernst & Young's audit report and the audited financial statement in the 1986 annual report it made to its shareholders and the Form 10–K it filed with the Securities and Exchange Commission.

The banks merged in June 1987.[2] RepublicBank offered several securities as part of the merger, including notes and two classes of stock in the merged entity. Together with InterFirst, RepublicBank issued a Joint Proxy and Prospectus soliciting their respective shareholders' proxies to approve the merger. The Joint Proxy and Prospectus also discussed the common stock and one series of preferred stock to be issued in connection with the merger. To promote another series of preferred stock and capital notes, RepublicBank issued two other prospectuses. These two prospectuses incorporated by reference the Joint Proxy and Prospectus. All three prospectuses incorporated RepublicBank's 1986 Form 10–K, which contained the audited financial statements and Ernst & Young's audit opinion. These documents were also incorporated by reference in a section of the prospectuses entitled "Experts," which stated that the RepublicBank financials were incorporated "in reliance upon [the audit] report and

---

1. Although Arthur Young & Company actually conducted the audit and made the representations at issue in this case, we will refer to its successor-in-interest, Ernst & Young, in this opinion.

2. RepublicBank changed its name to First RepublicBank Corporation, and InterFirst merged with IFRB Corporation, a wholly owned subsidiary of RepublicBank formed for the purpose of facilitating the merger. The new bank assumed InterFirst's existing debts.

upon the authority of [Ernst & Young] as experts in auditing and accounting." Finally, RepublicBank included the three prospectuses in the Form S–3 registration statements filed with the SEC to register the securities described in the prospectuses. Ernst & Young consented to including its audit opinion and the financial information that had been the subject of its report in the prospectuses and to having its name mentioned in the "Experts" section.

The underwriters who were seeking buyers for the merger-related securities contacted Pacific. At the time, Pacific was considering whether to purchase the 1982 InterFirst notes. It was initially reluctant to do so because of its experience with other InterFirst notes purchased some years earlier, which it had placed on its problem asset list due to InterFirst's poor financial condition. But after reviewing public information relating to the merger, including the merger prospectuses and newspaper articles, Pacific decided that the InterFirst notes were a good investment because they would be backed by the merged bank. Pacific bought $415,725 of the 1982 InterFirst notes one month after the merger, and then bought nearly $8 million more a few months later. Pacific did not buy any securities offered in the three prospectuses.

Shortly after Pacific completed buying the InterFirst notes, the merged entity, First RepublicBank Corporation, disclosed serious financial problems with its real-estate portfolio and filed for bankruptcy. Alleging that it had been misled by fraudulent representations in the three prospectuses, Pacific sued Ernst & Young, among others.[3] Pacific alleged that Ernst & Young's audit opinion contained misrepresentations, including statements that the audit complied with generally accepted auditing standards ("GAAS") and that the financial statements "fairly presented" RepublicBank's financial position as of December 31, 1986. Pacific alleged that the financial statements did not accurately reflect RepublicBank's financial condition and actually understated RepublicBank's real-estate liabilities. Pacific further alleged that Ernst & Young violated GAAS standards, including the auditor's standard of independence. Ernst & Young allegedly violated the independence standard by failing to disclose that, at the time Ernst & Young issued its opinion, several of its partners had significant outstanding RepublicBank loans.

Ernst & Young moved for summary judgment based in part upon affidavits asserting that Ernst & Young did not specifically intend for Pacific to rely on representations made in the 1986 audit report when making its decision to buy the InterFirst notes. Pacific responded and filed a cross-motion for partial summary judgment claiming that, as a matter of law, Ernst & Young intended to induce its reliance. Pacific also argued that, because Ernst & Young failed to challenge its claims for conspiracy and "aiding and abetting" the fraud others committed, summary judgment on those claims was improper.

To defeat Ernst & Young's motion, Pacific produced two experts' affidavits and an affidavit from Larry Card, a Pacific vice-president who had overseen the InterFirst note purchases. All three affidavits state that it is a commonly known and accepted practice in the financial industry for investors like Pacific to rely on representations about an entity contained in

---

**3.** Pacific also sued First RepublicBank Corp., IFRB Corp., and the underwriters that facilitated the merger. But the banks filed for bankruptcy, and Pacific was unable to proceed against them. Pacific settled with the underwriters.

SEC filings, whether the investor is purchasing the specific security being offered or another investment the entity backs.

The trial court granted Ernst & Young's summary judgment motion and denied Pacific's cross-motion as moot. Pacific appealed, and the court of appeals reversed the summary judgment. 10 S.W.3d 798. It held that there were fact issues on each element of Pacific's common-law fraud claim and that Ernst & Young's motion did not discuss the conspiracy and "aiding and abetting" claims. *Id.* In concluding that a fact issue existed on Ernst & Young's intent, the court of appeals applied section 531 of the *Restatement,* which provides:

> One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or *has reason to expect* to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

RESTATEMENT (SECOND) OF TORTS § 531 (1977) (emphasis added). The court held that Pacific's three affidavits created a fact issue on whether Ernst & Young had "reason to expect" that an institutional investor like Pacific would rely on its representations about RepublicBank's financial strength in purchasing securities issued by InterFirst before the banks merged. 10 S.W.3d at 807.[4] We granted Ernst & Young's petition for review to examine the intent element of Pacific's fraud claim.

## II. Fraud

■ As the summary judgment movant, Ernst & Young has the burden to establish, as a matter of law, that there are no material fact issues concerning one or more of the essential elements of Pacific's claims. *See Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999). When reviewing a summary judgment, we assume that all evidence favorable to the nonmovant is true. *Id.* at 753. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

■ To prevail on its fraud claim, Pacific must prove that: (1) Ernst & Young made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce Pacific to act upon the representation; and (4) Pacific actually and justifiably relied upon the representation and thereby suffered injury. *See Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983). Ernst & Young's summary judgment motion sought to negate each of these elements, but its argument here concerns only the third and fourth elements. Specifically, Ernst & Young contends that it did not intend to induce Pacific's reliance on its audit report and, in any event, Pacific's reliance was not justifiable.

The court of appeals applied the *Restatement's* "reason-to-expect" standard; that is, Pacific could establish fraud's intent element by showing that Ernst & Young had "reason to expect" that institutional investors like Pacific would rely on Ernst & Young's audit opinion when evaluating securities that the audited entity backs. 10 S.W.3d at 804–807 (citing RESTATEMENT (SECOND) OF TORTS § 531 (1977)). Ernst & Young claims the court of appeals erred because Texas law requires Pacific to demonstrate a direct intent to specifical-

4. The court of appeals also held that it could not reach Pacific's contention that the trial court erred in denying its cross-motion for summary judgment because the motion did not seek a final disposition of all claims in the trial court. 10 S.W.3d at 810.

ly induce Pacific's reliance in order to maintain its fraud claim. In other words, Ernst & Young asserted that Pacific must show that Ernst & Young, in auditing RepublicBank's 1986 financial statements, specifically intended to induce Pacific to buy the InterFirst notes. Ernst & Young likens the direct-intent requirement to the doctrine of "privity," which requires a direct relationship between the alleged fraudfeasor and a specific known person. Ernst & Young contends that the *Restatement's* reason-to-expect standard is incompatible with Texas law in this regard. We disagree.

## A. Intent

 Our fraud jurisprudence has traditionally focused not on whether a misrepresentation is directly transmitted to a known person alleged to be in privity with the fraudfeasor, but on whether the misrepresentation was intended to reach a third person and induce reliance. *See, e.g., Gainesville Nat'l Bank v. Bamberger*, 77 Tex. 48, 13 S.W. 959 (1890). In *Bamberger*, for example, a firm made statements to an agency regarding its financial status and solvency, and subscribers to that agency relied upon those statements in extending credit to the firm. We held that a fraud cause of action exists "[i]f the false representations be made with a view of reaching the third person to whom it is repeated, and for the purpose of influencing him." *Id.* at 960–61 (citations omitted). Similarly, we allowed a third-party bonding company to sue an accounting firm based on its fraudulent report prepared for a school district, stating

> [W]here a party makes a false representation to another with the intent or knowledge that it should be exhibited or repeated to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making

the false statement for the damages resulting from the fraud.

*American Indem. Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765 (Tex.Civ.App.—Waco 1937, writ ref'd). Thus, we have held that a misrepresentation made through an intermediary is actionable if it is intended to influence a third person's conduct.

Ernst & Young relies on *Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544 (1954), for the proposition that there must be privity between the alleged fraudfeasor and the person he intends to influence. But there we focused on what the defendant knew and could therefore have intended, not on whether the parties were in privity. *Id.* at 546. We held that the defendant who had made misrepresentations about some property to a potential buyer in the presence of a Mr. Wall, who was with the buyer, was not liable to Wall for fraud when Wall relied on the statements in buying the property instead. *Id.* Although we noted that the defendant was not a party to the transaction because he did not own the property that Wall bought, our holding was based on what the defendant knew. *Id.* We reasoned that, because there was no evidence that the defendant knew Wall was interested in the property, the defendant could not have intended to induce Wall's reliance. *Id.*

Under *Restatement* section 531, a person who makes a misrepresentation is liable to the person or class of persons the maker intends or "has reason to expect" will act in reliance upon the misrepresentation. RESTATEMENT (SECOND) OF TORTS § 531 (1977). Our jurisprudence, which focuses on the defendant's knowledge and intent to induce reliance, is consistent with the *Restatement* and with the law in other jurisdictions that have considered the issue. Those jurisdictions have either ex-

plicitly followed section 531 [5] or adopted its approach.[6]

Ernst & Young claims that the *Restatement's* reason-to-expect language creates a foreseeability standard for fraud that is contrary to Texas's specific intent requirement and is more akin to a "knew or should have known" negligence standard. According to Ernst & Young, Texas jurisprudence has always required an actual purpose or desire to induce reliance, thus precluding liability if a defendant has a reason to expect reliance but no desire or purpose to bring it about.

While it is true that Texas courts have not used the words "reason to expect" when discussing fraud's intent element, a defendant who acts with knowledge that a result will follow is considered to intend the result. *See generally Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48–49 (holding that evidence the defendant knew the plaintiff would rely on its representations supported fraud finding); *cf. Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) (holding that to establish intentional conduct " 'the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a substantial certainty.' " (quoting *VerBouwens v. Hamm Wood Prods.*, 334 N.W.2d 874, 876 (S.D.1983))); Keeton, *Ambit of Responsibility for Fraud*, 17 TEX. L. REV. 1, 9–10 (1938). Thus, Texas jurisprudence is entirely consistent with section 531's reason-to-expect standard, which re-

---

**5.** *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745, 773–74 (1992) (citing *Restatement* § 531 for the general rule that auditors may be liable to third parties for intentional misrepresentations); *Clark v. McDaniel*, 546 N.W.2d 590, 593–94 (Iowa 1996) (following *Restatement* §§ 531 & 533); *Citizens State Bank v. Gilmore*, 226 Kan. 662, 603 P.2d 605, 611–12 (1979) (following *Restatement* §§ 531 & 533); *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301, 315–16 (1988) (following *Restatement* § 531); *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash.2d 107, 744 P.2d 1032, 1070–71 (1987) (following *Restatement* § 531); *see also Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 436 N.E.2d 212, 215 (1982) (citing *Restatement* § 531 and implying that "reason to expect" is sufficient to establish fraud liability).

**6.** *Hines v. Riverside Chevrolet-Olds, Inc.*, 655 So.2d 909, 920 (Ala.1994) (holding that a defendant may be liable for fraud to anyone the defendant specially expected would rely on his misrepresentation); *Gulf Oil Corp. v. Newton*, 130 Conn. 37, 31 A.2d 462, 463 (1943) (noting that the principle of indirect reliance "also applies where it is within the contemplation of the person making the representation that it will be communicated to and induce action by anyone of a group or class"); *Advance-Rumely Thresher Co. v. Ja-*

*cobs*, 51 Idaho 160, 4 P.2d 657, 660 (1931) (applying a "reason to expect" standard); *Highland Motor Transfer Co. v. Heyburn Bldg. Co.*, 237 Ky. 337, 35 S.W.2d 521, 523–24 (1931) (same); *Oppenhuizen v. Wennersten*, 2 Mich.App. 288, 139 N.W.2d 765, 768 (1966) (same); *Freeman v. Myers*, 774 S.W.2d 892, 893–94 (Mo.Ct.App.1989) (same); *Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803 (1986) (holding that liability for fraud can rest on communication of misinformation to an agent, with reason to expect that the agent will communicate that misinformation to third parties); *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 754 A.2d 1188, 1196–97 (2000) (distinguishing "indirect reliance," when the plaintiff relies on statements the defendant had reason to expect would reach her, from a "fraud-on-the-market" theory); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931) ("To creditors and investors to whom the employer exhibited the certificate, the defendants owed a like duty to make it without fraud, since there was notice in the circumstances of its making that the employer did not intend to keep it to himself."); *American Nat'l Bank v. Tonkin*, 286 Or. 73, 592 P.2d 1008, 1012–14 (1979); *see also Reed Paper Co. v. Procter & Gamble Distrib. Co.*, 807 F.Supp. 840, 845 (D.Me.1992) (applying Maine law); *Rusch Factors, Inc. v. Levin*, 284 F.Supp. 85, 90–91 (D.R.I.1968) (applying Rhode Island law).

quires a degree of certainty that goes beyond mere foreseeability. *See Geernaert v. Mitchell*, 31 Cal.App.4th 601, 37 Cal. Rptr.2d 483, 487 (1995); *see also Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (holding that evidence on whether accountants "should have known" plaintiff would rely on combined financial statements does not satisfy Texas fraud law's intent-to-induce-reliance element, which requires more than mere foreseeability).

The *Restatement's* comments further illustrate the narrow scope of the reason-to-expect standard and foreclose the potential for "unlimited liability" that Ernst & Young decries. Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather, the alleged fraudfeasor must "have information that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons *and will influence their conduct.*" RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977) (emphasis added). Section 531 also applies a similar-transaction requirement that further circumscribes that section's scope and offers additional guidance in applying the reason-to-expect standard. It is not enough that a defendant intends or has reason to expect that its representation will reach and be relied upon by one who receives it. The plaintiff must have incurred pecuniary loss "in the type of transaction in which [the maker of the representation] intends or has reason to expect [his or her] conduct to be influenced." RESTATEMENT (SECOND) OF TORTS § 531 (1977). Though the transaction sued upon need not be identical to that the defendant contemplates, it must have the same essential character: "It may differ in matters of detail or in extent, unless these differences are so great as to amount to a change in the essential character of the transaction." *Id.* § 531 cmt. g. In sum, the reason-to-expect standard requires more than mere foreseeability; the claimant's reliance must be "especially likely" and justifiable, and the transaction sued upon must be the type the defendant contemplated. Thus, while we need not presently decide whether to adopt section 531, the reason-to-expect standard's reach is not as broad as Ernst & Young claims and adequately protects a defendant from unlimited liability without requiring privity.

We conclude that section 531's reason-to-expect standard comports with our jurisprudence and does not expand the parameters of common-law fraud in Texas as Ernst & Young claims. We disapprove of *Kanon v. Methodist Hospital*, 9 S.W.3d 365, 372 (Tex.App.—Houston [14th Dist.] 1999, no pet.), to the extent it suggests that Texas law requires privity to establish fraud. But we agree with Ernst & Young that the court of appeals incorrectly applied the reason-to-expect standard to the summary-judgment proof.

## B. Reason to Expect

Pacific offered affidavits from an employee and two experts to show that Ernst & Young had reason to expect that Pacific would rely on the RepublicBank audit opinion when deciding to purchase the InterFirst notes. Victor Moore, a certified public accountant, testified that Ernst & Young "knew" that investors in all securities backed by First Republic, the merged entity, would rely upon the information in the audit report. Larry Card, a Pacific executive vice-president, testified that it was "known and expected" by public accounting firms like Ernst & Young that documents like the prospectuses and proxy materials at issue here are widely disseminated throughout the investment community and investors rely upon infor-

mation from these materials when evaluating investments in securities the subject entity backs. Finally, Alan Coleman, former dean of Southern Methodist University's Edwin L. Cox School of Business, testified that investors like Pacific commonly rely on representations made in SEC-filed documents in evaluating securities backed by an entity. He also testified that Ernst & Young's contention that it did not intend Pacific to rely on the audit report in buying the InterFirst notes was contrary to commonly accepted and firmly established practices in the investment community. The court of appeals concluded that this evidence raised a fact issue on whether Ernst & Young had "reason to expect" Pacific's reliance on the audit report in deciding to buy the InterFirst notes. 10 S.W.3d at 806. We disagree.

■ Pacific's affidavits speak in terms of what is commonly "known" or "expected" in the investment community. But even an obvious risk that a third person will rely on a representation is not enough to impose liability. *See* RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977). General industry practice or knowledge may establish a basis for foreseeability to show negligence, but it is not probative of fraudulent intent. To prove that an alleged fraudfeasor had reason to expect reliance,

[t]he maker of the misrepresentation *must have information* that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons and will influence their conduct. There must be something in the situation *known to the maker* that would lead a reasonable man to govern his conduct on the assumption that this will occur. *If he has the information*, the maker is subject to liability under the rule stated here.

*Id.* (emphasis added). The generalized industry practice or understanding the affi-

davits describe is insufficient to show that Ernst & Young possessed information of an especial likelihood that investors like Pacific would rely on Ernst & Young's statements in the merger-related prospectuses in purchasing securities InterFirst had issued years earlier.

■ Pacific argues that, even without the affidavits, the SEC documents were filed under statutes designed to protect investors like Pacific; accordingly, *Restatement* section 536 affords a presumption that Ernst & Young had reason to expect Pacific's reliance on the filed documents. RESTATEMENT (SECOND) OF TORTS § 536 (1977). Section 536 provides:

If a statute requires information to be ... filed ... for the protection of a particular class of persons, one who makes a fraudulent misrepresentation in so doing is subject to liability to the persons for pecuniary loss suffered through their justifiable reliance upon the misrepresentation in a transaction of the kind in which the statute is intended to protect them.

*Id.* Under this section, one who complies with a statutory filing requirement is presumed to have reason to expect that the information will reach and influence the class of persons the statute is designed to protect. *Id.* cmt. c. In determining the protected class, the focus is on the statute's purpose rather than the person furnishing the information. *Id.* cmt. d.

Pacific claims that it relied on all publicly available information about Republic-Bank, including its Form S–3 registrations and Form 10–K. A Form S–3 is filed under regulations issued pursuant to the Securities Act of 1933, 15 U.S.C. 77a *et seq.*, which mandates delivery of a prospectus to an investor upon the distribution of securities. 17 C.F.R. § 239.13 (prescribing Form S–3 for registration by certain issuers under Securities Act of 1933). A

Form 10–K is filed pursuant to the Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.*, which mandates periodic filing of disclosure documents. 17 C.F.R. § 249.310. These and other federal securities regulations emerged in the aftermath of the 1929 market crash and were generally designed to protect investors. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194–95, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Pacific points to the federal securities acts' enforcement mechanism, Rule 10b–5, and claims that it is a member of the investing public these regulations were designed to protect; therefore, *Restatement* section 536 presumes Ernst & Young had reason to expect Pacific's reliance on the SEC-filed documents. But section 536 cannot be applied so broadly.

According to the *Restatement*, the general purpose behind a statute requiring a corporation to publicly report its financial condition is to make the information available to all those who consider it important in determining their course of action "in any type of transaction with the corporation in question." RESTATEMENT (SECOND) OF TORTS § 536 cmt. e (1977). But Pacific's purchase of the InterFirst notes was not a transaction with RepublicBank or with the proposed merger entity described in the offerings that incorporated the SEC filings. While section 536's presumption might apply to purchasers of securities in the merged entity or to RepublicBank shareholders who relied on the filed information in voting to approve the merger, which we do not decide, we cannot say its reach extends to open-market purchases of unrelated securities.

Moreover, unlike section 531, which is compatible with Texas fraud jurisprudence, section 536 has no counterpart in Texas common law and other courts have rarely applied it. *See Handy v. Beck*, 282 Or. 653, 581 P.2d 68, 73–75 (1978) (apply-ing *Restatement* § 536 to statute regulating water wells); *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301, 310–11 (1988) (applying § 536 to representations to county's municipal authority regarding sewage connection). Because section 536 effectively alleviates a claimant's burden to show intent to induce reliance in fraud actions, it should be applied narrowly if at all. Investors already have remedies for securities violations under Rule 10b–5 and other federal and state securities laws. Indeed, this case was originally filed in federal court as a Rule 10b–5 action, but was dismissed because the statute of limitations had run. *Pacific Mut. Life Ins. Co. v. First RepublicBank Corp.*, 53 F.3d 1409, 1410 (5th Cir.1995). Because these and other remedies are available to protect investors, we are reluctant to apply section 536's presumption and subject market participants to liability for fraud damages to an almost limitless class of potential plaintiffs.

In sum, we hold that, because Ernst & Young negated the intent-to-induce-reliance element of Pacific's fraud claim, the trial court properly granted summary judgment in Ernst & Young's favor. And because summary judgment was proper on this basis, we need not consider Ernst & Young's alternative argument that Pacific's reliance was not justifiable. But Pacific contends that, even if summary judgment on its fraud claim was proper, the trial court erred in granting summary judgment on its conspiracy and "aiding and abetting" claims, which were not the subject of Ernst & Young's summary-judgment motion. We now turn to that issue.

## III. Pacific's Other Claims

■ The court of appeals held that Pacific's conspiracy and "aiding and abetting" claims were sufficiently pleaded, and the trial court erred in granting summary

judgment on these claims. 10 S.W.3d at 809–10. But assuming that Pacific sufficiently pleaded these claims, as the court of appeals held, summary judgment was nonetheless proper given the nature of Pacific's pleadings and our disposition of the fraud claim.

■ A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means. *See Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex.1998). Fraud is the unlawful purpose or means that forms the basis of Pacific's conspiracy and "aiding and abetting" [7] allegations; as the court of appeals noted, these allegations "do not relate to any other theory of recovery pleaded in the trial court." 10 S.W.3d at 810. Ernst & Young's motion asserted that the undisputed facts entitled it to summary judgment on the fraud claim and on "any other 'claims' that Pacific Mutual has asserted"; thus, its motion encompassed these dependent claims. We have already held that the trial court did not err in granting Ernst & Young summary judgment on Pacific's fraud claim. Because Pacific's conspiracy and "aiding and abetting" claims are premised on Ernst & Young's alleged fraud, our conclusion on the fraud issue necessarily disposes of these other claims. *Cf. Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex.2000) (holding that failure of a claim for breach of contract necessarily defeated claim for breach of fiduciary duty that depended on breach of contract). Accordingly, the trial court did not err in granting Ernst & Young a final summary judgment.

7. Because of our disposition, we do not consider whether Texas law recognizes a cause of action for "aiding and abetting" fraud sepa-

## IV. Conclusion

We conclude that Ernst & Young is entitled to summary judgment on Pacific's fraud claim because it negated the intent element of the claim as a matter of law by establishing that it did not have reason to expect Pacific would rely on the audit report when it bought the InterFirst notes. We also conclude that the trial court correctly rendered final judgment on all of Pacific's claims. We therefore reverse the court of appeals' judgment and render judgment for Ernst & Young.

rate and apart from a conspiracy claim. *See* 10 S.W.3d at 809 n. 12.