Joseph J. DiGRAZIA and Thomas
J. DiGrazia, Appellants,

v.

ATLANTIC MUTUAL INSURANCE
COMPANY, Appellee.

No. 06–96–00068–CV.

Court of Appeals of Texas,
Texarkana.

Argued April 8, 1997.

Decided April 18, 1997.

Stephen T. Arnold, for Appellants.

Melvin Wilcox III, Smead, Anderson, Wilcox, Dunn, Longview, Robert W. Weber, Atchley, Russell, Waldrop, Hlavinka, Texarkana, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Joseph J. DiGrazia and Thomas J. DiGrazia appeal from a summary judgment granted in favor of Atlantic Mutual Insurance Company. We sever and affirm the summary judgment as to the appellants' DTPA and Insurance Code claims, but reverse the summary judgment on the appellants' fraud claim and remand for trial.

Many of the facts of this case were set out in a previous opinion of this Court. *DiGrazia v. Old,* 900 S.W.2d 499 (Tex.App.-Texarkana 1995, no writ). The appellants owned a two-year-old thoroughbred filly, Greatmate, which they delivered to Ray Shumake's racehorse training farm in Bowie County. On May 24, 1991, Shumake took the horse to veterinarian Gary Old for treatment of a tendon problem. Old treated the horse with a procedure known as pin firing and returned the horse to Shumake. On June 1, 1991, Shumake returned the horse to Old because the skin on the horse's legs was sloughing.

The horse remained at the veterinary hospital until June 5, 1991, when an electrical storm occurred in the area. That evening, Old found the horse dead in her stall. The appellants were quickly informed of Greatmate's death. Old prepared a necropsy report, stating that the horse probably died either of electrocution due to the storm or septicemia (blood poisoning). The report stated that septicemia was the more probable cause of death.

Old informed his liability insurer, the appellee, of the incident. When the appellants asked about the necropsy results, Old told them that the records had been forwarded to the appellee. The appellants asked the appellee about the report, but were told that the report was being evaluated and was unavailable. The appellee did not tell the appellants that there was a possible cause of death other than electrocution. Finally, on November 30, 1991, the appellants received a copy of the necropsy report.

The appellants filed a negligence action against Old and Shumake on November 8, 1993. The trial court granted summary judgment in favor of the defendants because the suit was barred by a two-year statute of limitations. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). On appeal, the appellants contended that the summary judgment was erroneous because they had raised the affirmative defense of fraudulent concealment. On June 13, 1995, this Court reversed the summary judgment in favor of Old because he had not conclusively negated fraudulent concealment. However, we affirmed the summary judgment in favor of Shumake because there was no evidence that Shumake actually knew that septicemia was the probable cause of death or that Shumake purposefully concealed this fact from the appellants.

On November 20, 1995, the appellants filed a first amended petition, adding the appellee as a defendant. The appellants asserted fraud, DTPA, and Insurance Code claims, alleging that the appellee affirmatively misrepresented that electrocution was Greatmate's cause of death, thereby preventing the appellants from asserting a cause of action against Shumake. On June 13, 1996, the

appellee filed a motion for summary judgment, arguing that it owed no duties on which to predicate liability, that the DTPA and Insurance Code were inapplicable, that there was no independent cause of action for fraudulent concealment, and that the appellee's actions did not proximately cause the appellants' damages. On August 6, 1996, the trial court granted summary judgment in an order that also severed the appellants' claims against the appellee from the appellants' claims against Old.

■ The appellee has the burden of showing this Court that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). In granting summary judgment, the trial court did not limit its ruling to any of the particular grounds urged by the appellee. Therefore, we must affirm the summary judgment for any cause of action for which any of the theories advanced in the summary judgment motion was meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

■ The appellee's summary judgment evidence consists solely of an affidavit of one of its employees, noting that the appellants are not insured by the appellee. This affidavit is not relevant to the issues before us. Therefore, the appellee has presented no summary judgment evidence. However, appellate review is not precluded if the summary judgment motion was granted based on a point of law, with undisputed facts. *Segrest v. Segrest*, 649 S.W.2d 610, 611 (Tex.1983); *Sandler v. Bufkor, Inc.*, 658 S.W.2d 289, 292 (Tex. App.-Houston [1st Dist.] 1983, no writ); *Gupta v. Ritter Homes, Inc.*, 633 S.W.2d 626, 628 (Tex.App.-Houston [14th Dist.] 1982, *aff'd in part & rev'd in part on other grounds*, 646 S.W.2d 168 (Tex.1983).

■ The appellants' brief does not contravene the appellee's summary judgment argument that the Insurance Code and DTPA provisions are inapplicable. We consider unargued bases for reversing a summary judgment, **if the appellant challenges the summary judgment with a single general point of error.** *Stevens v. State Farm Fire and Cas. Co.*, 929 S.W.2d 665, 669–70 (Tex.App.-Texarkana 1996, writ denied). In this case, the appellants specifically challenge the arguments that fraud was not actionable, that the appellee owed no duties to the appellants, and that there was no proximate cause. Because the appellants do not argue on appeal that the trial court incorrectly determined that the Insurance Code and DTPA were inapplicable, this Court need not consider such an argument as a ground for reversal. We cannot reverse a summary judgment based on a ground not assigned as a point of error. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex.1990); *Central Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex.1986). Therefore, we review only the granting of summary judgment on the fraud claim.

■ The appellee first argues that "[i]n essence, Appellants are trying to use fraudulent concealment as a cause of action to recover for the statute of limitations against a nonparty in the suit." Because fraudulent concealment equitably estops a party claiming the statute of limitations, *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983), the appellee argues that it cannot be the basis of an independent cause of action. The appellee's argument mischaracterizes the appellants' case. The appellants plead common-law fraud, claiming that the appellee "represented that the sole cause of death of Plaintiffs' horse was electrocution...." Therefore, we must ask whether a party may be held liable in fraud for misrepresentations that caused another party to delay suing a third party until after the running of the statute of limitations. Relevant Texas case law is sparse. In *Wichita Falls & S.R. Co. v. Durham*, 132 Tex. 143, 120 S.W.2d 803 (1938), the plaintiff was injured on the job and settled with his employer. Subsequently, he twice sued his employer for negligence under the Federal Employers' Liability Act (FELA). The Act provided that "[n]o action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued." *Id.* at 803. The first suit was voluntarily dismissed. The second suit was dismissed because it was not

filed within two years of accrual. The plaintiff subsequently filed a third suit, alleging that he lost his cause of action as a result of fraud by the employer. On these facts, the Texas Supreme Court held that the plaintiff could not maintain an action for fraud. The court noted that FELA's time bar, unlike most statutes of limitations, was not tolled by fraudulent concealment. Instead, it was an absolute bar to suit once two years had passed. Therefore, the plaintiff's suit sought an end around FELA's bar. The court concluded that such an end-around could not be permitted:

> No fact has been pointed out either by the Court of Civil Appeals or by defendant in error of any damages suffered by defendant in error, Durham, in this case, by reason of the alleged fraud, except such as flowed proximately from the alleged negligent act of the company, and which admittedly died at the end of two years from the date of the accident.

> Of the three cases filed by defendant in error, the factual basis, as we view it, for each was essentially the same. The first and second admittedly could not be maintained. Nor could the third, which is the present case, unless proof was made of damages separate and apart from his original case of negligence. If such a case is ever maintainable, it could be only upon a basis differing in some of its essentials from the one already dead and effectually released by law. If he could make such proof, none such appears here. He depended in this case upon proof of the original negligence, the consequent damages and the fraud, which was exactly his original cause of action, which the law precludes.

*Id.* at 804.

*Durham* is distinguishable from the instant case. In this case, the original cause of action was subject to a traditional statute of limitations that could be overcome by a showing of fraudulent concealment. Therefore, we cannot say that the appellants seek an end around the statute. For example, if Shumake had fraudulently concealed the cause of the horse's death, the appellants could have maintained a negligence action

against him, even though it was filed more than two years after accrual. As a result, in this case, it is more inconsistent *not* to allow the action against the appellee. Such a holding would provide plaintiffs a recovery if defrauded by the original tortfeasor, but not if defrauded by another party.

Thomas J. Griffin, Annotation, *Fraud and Deceit: Liability in Damages for Preventing Bringing of Action Before Its Being Barred by Statute of Limitations,* 33 A.L.R.3d 1077, 1080 (1970), discusses whether "one fraudulently prevented from bringing an action until after such time as it becomes barred by a statute of limitations may maintain an action based on fraud and deceit to recover damages for the loss thus occasioned." Usually, the answer is yes:

> It is noted, however, that while under the particular circumstances of several cases a negative position has been taken with respect to the maintainability of such an action, the courts therein variously reasoning, for example, that to allow an action for fraud on such grounds would be to permit the recovery of speculative damages or the accomplishment by indirection of that which cannot be done directly, the majority of those courts considering diverse cases of attempted recovery by persons allegedly duped into permitting their right of action to become so barred apparently regard as fully applicable thereto those rules and principles relating to fraud actions generally, and have, in consonance therewith, held or recognized that where one having an enforceable legal right is fraudulently prevented from bringing an action thereon until barred by a statute of limitations, a cause of action will lie for the loss suffered in consequence.

*Id.* at 1082 (footnotes omitted). The appellee offers no explanation why the reasoning of these cases would not permit a plaintiff to sue a party whose fraud caused the plaintiff to lose its cause of action against a third party. Absent any precedent, we decline to hold that the appellants may not maintain a cause of action in fraud against the appellee.

 The appellee argues that, as a matter of law, it did not defraud the appellants because it did not have a duty to tell them

about the necropsy report. The appellee again is confusing fraudulent concealment and fraud based on affirmative misrepresentation. A party can be held liable for fraud if it breaches a duty to disclose, usually created by a fiduciary or confidential relationship. *Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 403 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Swanson v. Schlumberger Tech. Corp.,* 895 S.W.2d 719, 732 (Tex.App.-Texarkana 1994, writ granted). However, duty is not an element of fraud by affirmative misrepresentation. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983) (listing the six elements of fraud by affirmative misrepresentation). The appellants do not allege that the appellee merely concealed Greatmate's cause of death. Instead, they allege that the appellee affirmatively misrepresented to them that the sole cause of death was electrocution. Therefore, they need not show that the appellee owes any duty to them.

■ The appellee also contends that, as a matter of law, it did not cause the appellants' damages because it provided the necropsy report to the appellants nineteen months before the statute of limitations ran. The appellants argue that there is no causation required to maintain a fraud cause of action. This argument is unavailing. To recover for fraud, a party must plead and prove that he suffered a pecuniary loss as a result of the false representation upon which he relied. The measure of damages is the actual amount of the complainant's loss resulting directly and proximately from fraud. *C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707, 718–19 (Tex.App.-Dallas 1989, writ denied). "Pecuniary losses that could not reasonably be expected to result from the misrepresentation are, in general, not legally caused by it and are beyond the scope of the maker's liability. This means that the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow." RESTATEMENT (SECOND) OF TORTS § 548A cmt. b (1977).

The appellants also argue that:

[I]t is axiomatic that there is a causal connection between Defendant Atlantic Mutual's conduct and the loss of the cause

of action by limitations against former Defendant Shumake, because the Sixth Court of Appeals has already held that the limitations period may be tolled concerning the cause of action against Defendant Old.

Now it is the appellants who are confusing common-law fraud and fraudulent concealment. "Fraudulent concealment ... tolls or suspends the running of the limitations period after it has commenced because the defendant has concealed from the plaintiff facts necessary for him to know that he has a cause of action against the defendant." *DiGrazia,* 900 S.W.2d at 504. In other words, fraudulent concealment does not have to cause the plaintiff's failure to file within the limitations period. Instead, fraudulent concealment operates to extend the limitations period. In contrast, fraud requires a showing of causation.

■ Nevertheless, the summary judgment was erroneous because we have before us no summary judgment evidence. Therefore, we cannot say that the appellee conclusively proved that its actions did not cause the appellants' damages. Therefore, we sever and affirm the summary judgment on the appellants' DTPA and Insurance Code claims, but reverse the summary judgment on the appellants' fraud claim and remand for trial.