PACIFIC MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

ERNST & YOUNG & CO., Appellee.

No. 05–97–00810–CV.

Court of Appeals of Texas,
Dallas.

Jan. 28, 2000.

Bruce A. Budner, Bruce A. Budner & Associates, Dallas, for Appellant.

Ralph Miller, Weil, Gotshall, & Manges, L.L.P., Dallas, for Appellee.

Before Chief Justice THOMAS and Justices WHITTINGTON and STEWART [1]

## OPINION

Opinion By Justice WHITTINGTON.

In this common-law fraud case, Pacific Mutual Life Insurance Company ("Pacific") appeals a summary judgment granted in favor of Ernst & Young, L.L.P. ("Ernst & Young").[2] In two points of error, Pacific contends the trial judge erred in granting summary judgment in favor of Ernst & Young and denying Pacific's motion for partial summary judgment. For the reasons set forth below, we reverse the trial court's judgment and remand this cause for further proceedings.

---

1. The Honorable Annette Stewart, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. Although the style in this case incorrectly identifies Ernst & Young as "Ernst & Young & Co.," we refer to the company, as the trial court did in its judgment, as "Ernst & Young, L.L.P."

## BACKGROUND

In late 1986 and early 1987, Ernst & Young's predecessor, Arthur Young & Company, audited the financial statements of RepublicBank Corporation ("Republic-Bank") for the year ending December 31, 1986.[3] Following the audit, Ernst & Young issued a report stating it had conducted the audit in accordance with generally accepted auditing standards ("GAAS") and, in its opinion, the financial statements "fairly presented" the financial position of RepublicBank as of December 31, 1986. This information was disseminated in January 1987.

Several months later, Ernst & Young consented to having its audit report included in certain documents filed with the Securities and Exchange Commission ("SEC"). Those documents, which included a joint proxy statement and prospectus, discussed in significant detail the terms of a potential merger between RepublicBank and Interfirst Bank. The documents indicated, among other things, that Republic-Bank's 1986 year-end financial statements had been examined by Ernest & Young, and those financial statements were being incorporated into the documents "in reliance upon [Ernst & Young's] report and upon the authority of such firm as experts in auditing and accounting." Shortly thereafter, in June 1987, the merger between the two banks occurred and the new entity, First RepublicBank Corporation ("First Republic"), assumed responsibility for Interfirst's existing debts.[4]

Shortly after the merger, Pacific, an insurance company based in Newport Beach, California, purchased nearly $8 million worth of "non-investment grade debt securities" previously issued by Interfirst (the "Interfirst notes"). The notes were scheduled to mature on October 1, 1989. However, shortly after Pacific purchased the notes, First Republic publicly disclosed that it was experiencing serious financial problems with its real estate portfolio. Not long thereafter, First Republic filed for bankruptcy. This, according to Pacific, rendered the Interfirst notes "effectively worthless."

After First Republic filed for bankruptcy, Pacific sued Ernst & Young as well as a number of other entities. In its petition, Pacific alleged, among other things, that (1) Ernst & Young's 1986 audit report of RepublicBank was "materially false and misleading," (2) Ernst & Young "knew" at the time it issued the report that it had not reviewed RepublicBank's financial statements "in accordance with generally accepted auditing standards," and (3) Ernst & Young had "seriously breached the applicable auditor's standard of independence." Some time later, Ernst & Young filed a motion for summary judgment on Pacific's claims. In the motion, Ernst & Young argued it was entitled to judgment as a matter of law because (1) it did not make any material misrepresentations regarding the Interfirst notes; (2) Pacific did not actually, nor justifiably, rely on any statements or representations made by Ernst & Young; (3) Ernst & Young did not know its representations were false, nor did it act recklessly with respect to the truth or falsity of the representations; (4) Ernst & Young did not intend for Pacific to rely on its representations; and (5) Ernst & Young did not owe any duty to Pacific.[5]

3. Although Arthur Young conducted the audit and, accordingly, made all the representations at issue in this case, for convenience we refer to Arthur Young as Ernst & Young in this opinion.

4. Although Ernst & Young contends Republic-Bank (the pre-merger entity which Ernst & Young audited) was never responsible for Interfirst's debts, Pacific's summary judgment evidence suggests otherwise. Because this is

a summary judgment case, we take the evidence favorable to Pacific as true and indulge all reasonable inferences in Pacific's favor. See *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

5. Although Ernst & Young also argued that Texas law did not permit recovery for "fraud on the market" or any other "claims" allegedly asserted by Pacific, we need not address these points because (1) Pacific conceded in

In March and April 1997, Pacific filed a cross-motion for partial summary judgment on the issue of Ernst & Young's intent and a response to Ernst & Young's motion, contending (among other things) that Ernst & Young's motion failed to address Pacific's cause of action for "aiding and abetting" the commission of fraud by others. Ernst & Young responded to the latter point by filing special exceptions in the trial court. Thereafter, on April 17, 1997, the trial court granted Ernst & Young's summary judgment motion. Several weeks later, the court denied Pacific's cross-motion as moot. This appeal followed.

## STANDARD OF REVIEW

The standard of review in summary judgment is well established. See TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990); *Nixon*, 690 S.W.2d at 548–49; *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962); *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952); *Ross v. Texas One Partnership*, 796 S.W.2d 206, 209 (Tex.App.-Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex.App.-Dallas 1992, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors &*

*Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

## ERNST & YOUNG'S MOTION

In its first point of error, Pacific contends the trial judge erred in granting Ernst & Young's motion for summary judgment. Under this point, Pacific contends granting the motion was improper because (1) fact issues existed on each element of its common-law fraud claim, and (2) Ernst & Young's motion failed to address Pacific's claims for conspiracy and "aid[ing] and abett[ing] ... the frauds of others." After reviewing the record in this cause, we agree with Pacific.

### 1. Common–Law Fraud

■ To prevail on a common-law fraud claim, a plaintiff must establish (1) the defendant made a material representation, (2) the representation was false, (3) the defendant either knew the representation was false when made or made it recklessly without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that it be acted upon, (5) the representation was in fact relied upon, and (6) damage to the plaintiff resulted. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990) (op. on reh'g), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983); *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (op. on reh'g). In this case, Ernst & Young argued it was entitled to summary judgment because (1) Pacific could not, as a matter of law, establish the first five elements set out above; and (2) Ernst & Young owed no duty to Pacific. The trial judge agreed and, without specifying the basis for his ruling, granted summary judgment in Ernst & Young's favor. On

the trial court it was not relying on any "fraud on the market" theory, and (2) Ernst & Young conceded in its brief in support of summary judgment that its summary judgment motion did not address any causes of action other than Pacific's fraud cause of action.

appeal, Pacific contends this ruling was error. After reviewing the record in this cause, we agree. We will address each of Ernst & Young's arguments in turn.

### (a) Misrepresentations

■ Ernst & Young affirmatively stated in its report on RepublicBank's 1986 year-end financial statements that (1) it had reviewed the financial statements in accordance with GAAS; and (2) in its opinion, those statements "present[ed] fairly" the "consolidated financial position" of RepublicBank.[6] Although Bud Ward, the Ernst & Young partner in charge of the audit, stated in his summary judgment affidavit that Ernst & Young did not know or believe these statements were false when made, Pacific presented summary judgment evidence to the contrary.

In particular, Pacific presented the affidavit of Victor Moore, a certified public accountant with over twenty-five years' experience in accounting, finance, and management. Moore testified that Ernst & Young's statements were not true and that, contrary to Ward's claims, the Ernst & Young audit was not conducted in accordance with GAAS. In fact, Moore's report identified numerous examples of GAAS violations in the RepublicBank audit. Although Ernst & Young has disputed the existence of these violations, in this appeal we must take all evidence favorable to the nonmovant as true. Accordingly, we conclude (1) a fact issue exists on whether the representations made by Ernst & Young in connection with the 1986 RepublicBank audit were false, and (2) summary judgment was therefore not proper on this ground.

In reaching this decision, we necessarily reject Ernst & Young's argument that summary judgment was proper because Ernst & Young made no representations at all regarding Interfirst or the condition of the Interfirst notes. This argument is without merit. The allegations made by Pacific in this case do not turn on whether Ernst & Young made misrepresentations about the condition of Interfirst or the notes originally issued by Interfirst; instead, they focus on whether Ernst & Young made any material misrepresentations about *RepublicBank* and *its* financial condition. Because Pacific's claims are not premised on any alleged misrepresentation regarding Interfirst or the Interfirst notes, we conclude Ernst & Young's argument based on the *absence* of any such representations lacks merit.

■ We likewise reject the suggestion in Ernst & Young's brief that the alleged misrepresentations were not material because no reasonable investor would have relied on a report of RepublicBank's 1986 year-end financial condition in making the decision to purchase the Interfirst notes. We cannot agree with Ernst & Young on this point. In his summary judgment affidavit, Moore testified that the 1986 year-end financial statements audited by Ernst & Young would have "positively influenced a sophisticated investor's opinion of the Interfirst notes." Alan Coleman, another Pacific expert, likewise testified that it was a "commonly accepted practice" for investors like Pacific to rely on representations made in SEC-filed documents when evaluating investments in securities backed by an entity, regardless of whether the filed documents covered those securities specifically. This testimony indicates that a reasonable investor *would* have considered Ernst & Young's representations important in deciding to invest in the Interfirst notes and, accordingly, we conclude a fact issue exists regarding the materiality of Ernst & Young's representations in this case. *See Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 649 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.) (noting that misrepresentation is material if substantial likelihood exists that reasonable

---

6. Although the summary judgment record does not include an actual copy of Ernst & Young's report, the affidavit of Bud Ward, the engagement partner responsible for the RepublicBank audit, makes clear that these representations were in fact made in the report.

investor would consider representation important in deciding to invest). We reject Ernst & Young's arguments to the contrary.

### (b) Knowledge or Recklessness

■ As noted above, Ernst & Young stated in its report that it had reviewed the 1986 year-end financial statements in accordance with GAAS. In his affidavit, Moore testified that (1) Ernst & Young did *not* review the financial statements according to GAAS; and (2) he believed Ernst & Young "knowingly misrepresented that its [RepublicBank] audit conformed with GAAS, *when it knew it did not.*" (Emphasis added.) Moore's opinion is based, in large part, on what he describes as the "flagrant" and "pervasive" violations of GAAS that appeared during his review of relevant documents. We conclude this evidence raises a fact issue on whether Ernst & Young acted knowingly, or at the very least recklessly, with respect to the statement set out above.

■ We likewise conclude a fact issue exists on whether Ernst & Young acted knowingly or recklessly with respect to its statement in the 1986 audit report that, in its opinion, RepublicBank's financial statements fairly presented the consolidated financial position of RepublicBank as of December 31, 1986. As the Texas Supreme Court recognized in *Trenholm*, a fraud cause of action may be premised on an opinion when (1) the opinion is based on past or present facts, or (2) the speaker knows of the opinion's falsity. *See Trenholm*, 646 S.W.2d at 930. In this case, the opinion regarding RepublicBank's financial statements was based on past and present facts, and Moore's affidavit opines that Ernst & Young knew (or, at the very least, was reckless) about the opinion's falsity.[7] Under these circumstances, we conclude the evidence raises a fact issue on whether

Ernst & Young knew or was reckless with respect to the truth or falsity of this representation. Accordingly, summary judgment on this ground was improper.

### (c) Intent that Pacific Act on Representation

■ In its summary judgment motion, Ernst & Young also argued summary judgment was proper because (1) to prevail on the fraud claim, Pacific was required to show Ernst & Young specifically intended for Pacific to rely on the representations made in the 1986 audit report when making its decision to purchase the Interfirst notes; and (2) no such showing could be made in this case. Ernst & Young makes a similar argument on appeal. In response, Pacific argues that summary judgment was improper on this point because Pacific was only required to show (1) Ernst & Young intended that a particular class of persons rely on its representations, and (2) Pacific was a member of that class. After reviewing the record in this cause as well as applicable law, we agree with Pacific.

Section 531 of the Restatement Second of Torts discusses the imposition of liability for fraudulent misrepresentations. That section states:

> One who makes a fraudulent misrepresentation is subject to liability to the persons *or class of persons* whom he intends *or has reason to expect* to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

RESTATEMENT (SECOND) OF TORTS § 531 (1977) (emphasis added). Under section 531, a person has "reason to expect" a particular result if "he has information from which a reasonable man would con-

---

7. Christopher Beach, another expert retained by Pacific in this case, provided similar testimony. According to his report, Republic-Bank's credit quality problems were so perva-

sive they "would have been readily apparent to its auditor ... during the audit of the December 31, 1986 financial statements."

clude that the result will follow or would govern his conduct upon the assumption that it will do so." RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977). Stated otherwise, the maker of a misrepresentation is liable if he has information that would lead a reasonable man to conclude that "an especial likelihood" exists that it will reach certain persons and will influence their conduct. RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977).

■ Comment e to section 531 makes clear that liability for fraudulent misrepresentations may be imposed even when the maker of the misrepresentation does not know the identity of the person whom the misrepresentation will reach. RESTATEMENT (SECOND) OF TORTS § 531 cmt. e (1977). In that regard, comment e states:

> *Class of persons.* The maker may have reason to expect that his misrepresentation will reach any of a class of persons, although he does not know the identity of the person whom it will reach or indeed of any individual in the class.... The class may include a rather large group, such as potential sellers, buyers, creditors, lenders *or investors,* or others who may be expected to enter into dealings in reliance upon the misrepresentation.

RESTATEMENT (SECOND) OF TORTS § 531 cmt. e (1977) (emphasis added). Along those same lines, section 534 of the Restatement provides:

> One who makes a fraudulent misrepresentation intending or with reason to expect that more than one person or class of persons will be induced to rely on it, or that there will be action or inaction in more than one transaction or type of transaction, is subject to liability for pecuniary loss to any one of such persons justifiably relying upon the mis-

representation in any one or more of such transactions.

RESTATEMENT (SECOND) OF TORTS § 534 (1977).

In this case, Pacific presented a significant amount of summary judgment evidence indicating that Ernst & Young had "reason to expect" that (1) its representations regarding the 1986 year-end audit would reach a certain class of persons (*i.e.,* investors), and (2) members of that class would act in reliance on those representations. In this regard, Victor Moore testified that Ernst & Young "knew" that the information contained in its audit report would be relied upon by investors in all securities (both new and old) backed by First Republic. Thus, Moore opined that Ernst & Young intended for investors such as Pacific to rely on its representations regarding the 1986 year-end audit. Likewise, Larry Card, an executive vice-president with Pacific, testified that it was "known and expected" by public accounting firms that (1) documents like the ones here at issue (*i.e.,* prospectuses and proxy materials) are "widely and publicly disseminated throughout the investment community," and (2) information gleaned from those documents will be "used and relied upon" by investors when evaluating investments in securities backed by the subject entity.[8] Alan Coleman, former dean of Southern Methodist University's Edwin L. Cox School of Business, gave similar testimony, noting in particular that Ernst & Young's contention that it did *not* intend for Pacific to rely on its representations when making the decision to invest in the Interfirst notes was "contrary to commonly accepted practices and expectations that have existed in the investment community for decades." According to Coleman, Ernst & Young's contention that it did not

---

8. As Card explained, "[Ernst & Young], at a minimum, had to know these documents would be provided to institutional investors such as Pacific ... and that such information would be read and relied upon for purposes of evaluating any securities backed by the publicly traded entity [RepublicBank] and its successor FirstRepublic. Such audited financial information is and has been routinely used in this manner for decades and is why such audited financial information is required by law to be included in such filings."

intend for investors like Pacific to rely "border[ed] on the incredulous."

We have reviewed this evidence and, after doing so, we conclude (1) it raises a fact issue on whether Ernst & Young had "reason to expect" that Pacific would rely on its representations regarding the RepublicBank audit when making its decision to purchase the Interfirst notes, and (2) summary judgment on this ground was therefore improper. Although Ernst & Young presented summary judgment evidence indicating it did *not* intend for Pacific to rely on the 1986 year-end audit, other evidence in the summary judgment record suggests otherwise and a fact issue therefore remains on this point. Accordingly, we conclude the trial judge erred in granting summary judgment on this ground.[9]

In reaching this decision, we necessarily reject Ernst & Young's reliance on this Court's opinion in *Blue Bell.* In that case, Peat, Marwick audited the financial statements of Myers Department Store ("Myers") for the fiscal year ending February 1, 1981 and forwarded seventy copies of its audit report to Myers following completion of the audit. Thereafter, Myers furnished a copy of the report to Blue Bell, a clothing manufacturer with whom a Myers subsidiary had done business in the past. Based on that report, Blue Bell agreed to extend a substantial amount of credit to the Myers subsidiary. Thereafter, Myers filed for bankruptcy, and Blue Bell ultimately sued Peat, Marwick for fraud and negligent misrepresentation in connection with the 1981 audit.

The trial court granted summary judgment in favor of Peat, Marwick on all of the claims asserted, and Blue Bell appealed. On appeal, this Court reversed the trial court's grant of summary judgment on the negligent misrepresentation claim, but affirmed summary judgment on Blue Bell's fraud claim. *Blue Bell,* 715 S.W.2d at 410. In reaching our decision, we noted that while evidence that Peat, Marwick *should have known* that Blue Bell would rely on its misrepresentations may have been sufficient to sustain Blue Bell's negligent misrepresentation claim, it was not sufficient to overcome summary judgment on the fraud claim. *See Blue Bell,* 715 S.W.2d at 412–15. Because Blue Bell adduced no summary judgment evidence tending to show Peat, Marwick *intended* to induce Blue Bell's reliance, we concluded summary judgment on the fraud claim was proper. *See Blue Bell,* 715 S.W.2d at 415.

We find the decision in *Blue Bell* distinguishable from the instant suit. Our decision in *Blue Bell* stated only that a "should have known" standard is not applicable to fraud claims. However, unlike the plaintiff in *Blue Bell,* the plaintiff in this case did not argue that liability should be imposed because Ernst & Young "should have known" the plaintiff would rely on the representations. Rather, Pacific argued that liability should be imposed because the requirements of section 531 of the Restatement have been met. Our decision in *Blue Bell* says nothing about the applicability of section 531 to fraud claims or whether section 531's "reason to expect" standard is sufficient to establish the "intent to induce reliance" element of a fraud cause of action. "Reason to expect" requires possession of affirmative knowledge while "should have known" implies a lack of knowledge that should have been possessed. Thus, our decision in *Blue Bell* does not foreclose the possibility that having a "reason to expect" certain reliance will suffice to support a fraud claim in this

---

**9.** Although Ernst & Young would have us ignore the vast majority of Pacific's summary judgment evidence because, according to Ernst & Young, it does not constitute evidence of what Ernst & Young "actually knew" when it made the representations in this case, we conclude this argument is without merit. As noted above, the critical inquiry for us under section 531 is what Ernst & Young had "reason to expect" at the time it made the misrepresentations, not what Ernst & Young "actually knew." Because Pacific's summary judgment evidence is relevant to a determination of what Ernst & Young had "reason to expect," we conclude it is relevant to the issues involved in this case.

State. It follows that our decision in this case (that such a showing *is* sufficient) does not conflict with our previous decision in *Blue Bell*.[10]

In this case, Pacific presented summary judgment evidence showing more than just that Ernst & Young *should have known* Pacific would rely on the representations; it presented evidence showing that Ernst & Young had *reason to expect* that its representations regarding the 1986 year-end audit would be relied upon by institutional investors such as Pacific. Because we conclude this is sufficient to maintain a fraud cause of action in this State, we conclude Pacific's evidence raises a fact issue on whether Ernst & Young "intended" that Pacific rely on the representations in question. Accordingly, we conclude summary judgment on this ground was improper.

### (d) Actual and Justifiable Reliance

As noted above, to prevail on its fraud claim, Pacific would be required to show that, when making its decision to purchase the Interfirst notes, it actually and justifiably relied on Ernst & Young's misrepresentations. *See Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1025 (5 th Cir.1990) (noting that, under Texas law, fraud requires showing that plaintiff actually and justifiably relied on representation); *see also* RESTATEMENT (SECOND) OF TORTS § 531 (1977). Although justifiable reliance represents a lesser burden than "reasonable reliance," *see Haralson,* 919 F.2d at 1025, it nevertheless requires a showing that the plaintiff had a right to rely on the misrepresentation in question. *See Schonrock v. Taylor,* 212 S.W.2d 260, 263 (Tex.Civ.App.-Austin 1948, writ ref'd).

To determine justifiability, we consider whether—given the particular plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances—it is "extremely unlikely" that there was actual reliance on the plaintiff's part. *See Haralson,* 919 F.2d at 1026.

In this case, we conclude Pacific's summary judgment evidence raises a fact issue on both actual and justifiable reliance. In this regard, we look to the affidavit of Larry Card, the person who, since 1981, had been in charge of Pacific's fixed income security investments. Card testified that (1) he was responsible for the decision to purchase the Interfirst notes; (2) at the time Pacific purchased the notes, Pacific knew Interfirst was "a seriously troubled entity"; and (3) as a result, his decision to purchase the notes was heavily influenced by the strength of RepublicBank. In addition, Card testified that, because of Interfirst's poor financial condition, Pacific (1) relied heavily on RepublicBank's audited financial information, and (2) would not have purchased the notes if it had known that RepublicBank's financial condition was not consistent with Ernst & Young's representations. We have reviewed this testimony and, after doing so, we conclude it raises a fact issue on the issue of Pacific's "actual reliance."

We likewise conclude a fact issue exists on whether Pacific "justifiably relied" on Ernst & Young's representations. This conclusion is based, in part, on testimony from Victor Moore which indicated that, in Moore's expert opinion, Pacific was justified in relying on Ernst & Young's opinion regarding RepublicBank's financial condition. This conclusion is further bolstered by the testimony of Alan Coleman—who

---

**10.** We note additionally that the facts in *Blue Bell* are completely distinguishable from the facts presented here. In *Blue Bell*, copies of the auditor's report were given directly to the client. From the record in that case, it is unclear whether Peat, Marwick knew exactly what the client intended to do with the copies. By contrast, the report in this case was, with Ernst & Young's knowledge and consent, publicly filed and, thus, disseminated to a large group of investors. Because of the nature of the public filing in this case, we conclude the facts here are distinguishable from the facts in *Blue Bell* and present a significantly stronger case for concluding that Ernst & Young had "reason to expect" Pacific's reliance in this case.

likewise opined that Pacific "justifiably and reasonably" relied on Ernst & Young's representations when buying the Interfirst notes. According to the record, Coleman's opinion was based, at least in part, on the fact that it was a "commonly accepted practice" in the investment community for investors to rely on representations in SEC-filed documents even when those documents did not specifically cover the securities at issue. In our view, Coleman's testimony, coupled with Moore's testimony, raises a fact issue on whether Pacific justifiably relied on Ernst & Young's representations in this case. Accordingly, we conclude the trial judge erred in granting summary judgment based on the absence of actual or justifiable reliance.[11]

### (e) Duty

Finally, we turn to Ernst & Young's argument that summary judgment was proper because, as a matter of law, Ernst & Young owed no duty to Pacific. After reviewing the record and relevant law, we cannot agree with Ernst & Young on this point.

▆▆▆ As an initial matter, we note that duty is not an element of a common-law fraud claim. *See DeSantis,* 793 S.W.2d at 688; *Trenholm,* 646 S.W.2d at 930 (listing elements of fraud claim); *see also DiGrazia v. Atlantic Mut. Ins. Co.,* 944 S.W.2d 731, 735 (Tex.App.-Texarkana 1997, no writ). However, to the extent it may be considered a part of the intent element of a fraud claim, we conclude that a duty extends to all persons or class of persons that the fraud defendant intends or "has reason to expect" will rely on its misrepresentations. *See* RESTATEMENT (SECOND) OF TORTS § 531 (1977) (noting that one who makes fraudulent misrepre-

sentation is subject to liability to all persons whom he intends or has reason to expect will rely on misrepresentation). In addition, we note that the Supreme Court has recognized that a special "public responsibility" exists when, as here, independent public accounting firms certify the public reports of a corporation's financial condition. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 817–18, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (noting that duty extends beyond firm's "employment relationship" to investing public generally).

In this case, Pacific presented summary judgment evidence indicating that Ernst & Young had "reason to expect" that Pacific would rely on its representations regarding the 1986 year-end audit. Thus, there was evidence presented to the trial judge indicating that Ernst & Young did, in fact, have a responsibility to Pacific in this case. Moreover, Ernst & Young's own witness, Bud Ward, agreed that an independent auditor's responsibility extends beyond just the employment relationship and could include the "investing public" generally. Under these circumstances, we cannot conclude that Ernst & Young was entitled to summary judgment on the ground that it owed no duty to Pacific.

### 2. Conspiracy and/or Aiding and Abetting Claim

▆▆▆ On appeal, Pacific contends the trial judge erred in granting summary judgment on its "co-conspirator" and "aiding and abetting" allegations because (1) fact issues existed on whether Ernst & Young acted as a "co-conspirator and aider and abettor of the frauds of others," and (2) Ernst & Young presented no evidence or argument in support of summary judg-

---

11. Although Ernst & Young contends there is no evidence in the record before us indicating that anyone at Pacific ever reviewed or relied on Ernst & Young's audit report when deciding whether to buy the Interfirst notes, we disagree. Larry Card testified that either he or someone he supervised reviewed and relied on the public filings which contained Repub-

licBank's 1986 audited financial statements when making the decision to purchase the Interfirst notes. While Ernst & Young may believe this testimony is too "vague" to constitute proof that Pacific actually relied on the Ernst & Young representations, we conclude it is sufficient to overcome summary judgment.

ment on these claims. Ernst & Young responds that, although its summary judgment motion did not address any alleged "aiding and abetting" or "conspiracy" claim, final summary judgment was nevertheless proper because Pacific's petition failed to allege either of these claims in the trial court.[12] After reviewing the record in this cause, we agree with Pacific.

 Although rule 47(a) of the rules of civil procedure requires a pleading to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved," *see* TEX.R. CIV. P. 47(a), this does not require that each element of a claim be specifically alleged in a pleading. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex.1993) (op. on reh'g). Rather, it is sufficient if the cause of action can be "reasonably inferred" from the pleading. *See Boyles*, 855 S.W.2d at 601. In this case, Pacific's live pleading alleges that Ernst & Young "conspired with, aided and abetted, associated with, and assisted ... in the dissemination of false and misleading information or omissions of material facts to prospective investors in First Republic backed securities." The petition also alleged that Ernst & Young's participation in the fraud enabled First Republic to make misrepresentations to the public after the merger. We have reviewed this language and, after doing so, we conclude that (1) a claim for conspiracy or "aiding and abetting" may be reasonably inferred from this language, and (2) the language was therefore sufficient to support a conspiracy or "aiding and abetting" claim. Because Ernst & Young did not move for summary judgment on either of these claims, we conclude the trial judge erred in

granting summary judgment on these claims.[13]

In reaching this decision, we necessarily reject Ernst & Young's reliance on the supreme court's opinion in *Boyles v. Kerr*. In that case, the plaintiff asserted a claim for negligent infliction of emotional distress, and the jury awarded damages based on that cause of action. On appeal, the supreme court reversed, concluding that no such cause of action existed in Texas. *See Boyles*, 855 S.W.2d at 594–97. In reversing the damage award, the supreme court concluded that the award could not be upheld on the "alternative" theory that the defendant was guilty of "grossly negligent infliction of emotional distress" because no such theory was pleaded in the trial court. *See Boyles*, 855 S.W.2d at 600–01. In making this decision, the court recognized that the plaintiff's petition included language indicating the defendant's actions were "grossly negligent"; however, the court concluded those allegations could not be used to uphold the damage award because they were made in support of the plaintiff's claim for punitive damages, not as a separate cause of action. *See Boyles*, 855 S.W.2d at 601. Because the "gross negligence" allegations could not be construed to apply only to a separate cause of action for "grossly negligent infliction of emotional distress," the court concluded (1) the pleadings did not put the defendant on notice that the plaintiff would be seeking recovery on a separate cause of action for "grossly negligent infliction of emotional distress," and (2) upholding the damage award on that theory would have been improper. *See Boyles*, 855 S.W.2d at 601.

12. Although Ernst & Young also argues that no cause of action for "aiding and abetting" exists in Texas, we need not decide this point since Ernst & Young concedes it did not seek summary judgment on this point in the trial court. For purposes of this opinion, we assume, without deciding, that such a claim may be asserted in Texas, but our decision should not be construed as a holding that such a claim exists in Texas separate and apart from a conspiracy claim.

13. In its brief in support of summary judgment, Ernst & Young conceded that its motion (1) addressed only Pacific's fraud cause of action, and (2) should be treated as a motion for partial summary judgment if the trial court concluded that any claims other than fraud had been asserted.

This case is distinguishable from the court's decision in *Boyles*. In this case, unlike in *Boyles*, the allegations of "co-conspirator" and "aider and abettor" liability do not relate to any other theory of recovery pleaded in the trial court. Thus, there is no danger that Ernst & Young (1) construed those allegations as relating to some other theory of recovery, and (2) would be unfairly "surprised" by a construction of the pleadings that would allow recovery for a separate "conspiracy" and/or "aiding and abetting" claim. Likewise, we are not faced with a situation, like the court was in *Boyles*, where the plaintiff waited until after trial to assert the existence of an additional claim.[14] To the contrary, the plaintiff in this case made clear, at the summary judgment stage, that it had intended to assert additional claims in its pleadings. Had Ernst & Young believed either that (1) the pleadings did not adequately allege additional claims for conspiracy and/or aiding and abetting, or (2) summary judgment on those claims was appropriate, it should have pursued a ruling on its special exceptions or amended its summary judgment motion. It did neither, and we accordingly conclude summary judgment on those claims was improper.

For the reasons stated above, we sustain Pacific's first point of error.

### PACIFIC'S CROSS-MOTION

 In its second point of error, Pacific contends the trial judge erred in denying Pacific's cross-motion for summary judgment. After reviewing the record in this cause, we conclude this point is not properly before us in this appeal. As noted above, Pacific's cross-motion sought only a declaration regarding Ernst & Young's intent; it did not request a final disposition of Pacific's claims against Ernst & Young. Thus, it was only a motion for *partial* summary judgment. On

appeal, we may not consider cross-motions for summary judgment that do not seek a final disposition of all claims in the trial court. *See Montgomery v. Blue Cross & Blue Shield,* 923 S.W.2d 147, 152 (Tex. App.-Austin 1996, writ denied) (en banc) (refusing to render judgment based on cross-motion for partial summary judgment because motion did not seek final disposition of claims in trial court); *see also Runyan v. Mullins,* 864 S.W.2d 785, 790 (Tex.App.-Fort Worth 1993, writ denied) (recognizing that court may only render judgment on cross-motion when cross-motion seeks final judgment relief). Because Pacific's cross-motion did not seek a final disposition of Pacific's claims in this case, we conclude we may not consider the court's ruling on that motion in this appeal. Accordingly, we dismiss Pacific's second point of error.

For the reasons stated, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings.

---

**14.** According to the opinion in *Boyles*, the plaintiff in that case actually *waived* all theories of recovery other than negligent infliction

of emotional distress during trial. *See Boyles,* 855 S.W.2d at 601.