Opinion issued April 28, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00104-CV

———————————

DeAnna and Phillip Hofstetter, Individually and as Judgment
Creditors and Turnover Assignees of Maria I. Benitiz, Appellants

V.

Loya
Insurance Company,
Appellee



 



 

On Appeal from the 129th District Court 

Harris County, Texas



Trial Court Case No. 2008-44994

 



 

MEMORANDUM OPINION

          This
appeal concerns the applicability of an excluded driver endorsement provision
in an auto insurance policy.  DeAnna and
Phillip Hofstetter appeal the trial court’s traditional summary judgment in
favor of Loya Insurance Company.  They
contend that the endorsement provision was procured by misrepresentations and
was not enforceable.  They also assert
that the testimony of the policyholder was not credible and cannot support
summary judgment.

          We
affirm.

Background

While
driving a car owned by his mother, Juan Revuelta hit the Hofstetters car
causing damages.  Revuelta’s mother,
Maria Benitiz, insured that car and two other vehicles with Loya Insurance
Company and had renewed that policy two times before the accident and once
afterwards.  In her initial policy, two
renewals before the accident, and one renewal after the accident, Benitiz
signed an endorsement to the policy in which she agreed that “none of the
insurance coverage afforded by this policy” applied while Revuelta was
“operating your covered auto or any other motor vehicle.”  The exclusion appeared on a separate page and
included the following language: “515A. EXCLUSION OF NAMED DRIVER & PARTIAL
REJECTION OF COVERAGES . . . WARNING!
READ THIS ENDORSEMENT CAREFULLY!” 

The
Hofstetters sued Revuelta and Benitiz for negligence.  Loya denied coverage and refused to provide a
defense.  The trial court found in favor
of the Hofstetters, awarded damages, and rendered a turnover order granting them
any rights held by Benitiz or Revuelta to sue under the Loya policy.  

The
Hofstetters then sued Loya for breach of contract, violations of the Insurance
Code, and negligence.  Loya moved for a
traditional summary judgment on the ground that the policy expressly excluded Revuelta
as a covered driver.  As summary judgment
evidence, Loya attached the endorsement to the original policy, the renewals,
and excerpts from Benitiz’s deposition testimony.  The policy is written in English and Benitiz
speaks Spanish primarily.  In her
deposition, Benitiz testified that Loya explained the policy’s terms to
her in Spanish when she purchased it and at each of the renewals.  Benitiz
stated that she had the opportunity to ask questions and that she understood
the policy.  

The
Hofstetters responded by citing other portions of Benitiz’s deposition
testimony.  Benitiz
testified that she believed the car itself to be insured even if the policy did
not cover Revuelta.  They also contended that her credibility had been called
into doubt.  They also relied on
Revuelta’s deposition testimony that Loya told him he was covered by the
policy, but removed from coverage after the accident.  The trial court granted the summary
judgment motion and the Hofstetters appealed. 

Summary Judgment

          In one issue, the Hofstetters argue the trial court erred
in granting Loya’s summary judgment motion. 
They contend they raised a fact issue on whether Loya made
misrepresentations to procure the driver exclusion.  They also contend that Benitiz’s deposition
testimony is not credible and cannot support summary judgment.  

A.      Standard of Review

We review a trial
court’s summary judgment de novo.  Travelers
Ins. Co. v. Joachim, 315 S.W.3d
860, 862 (Tex. 2010).  Under the
traditional standard for summary judgment, the movant has the burden to show
that no genuine issue of material fact exists and the trial court should grant
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant moving for traditional summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an affirmative
defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910,
911 (Tex. 1997).  The motion must state
the specific grounds relied upon for summary judgment.  See Tex. R. Civ. P. 166a(c).  When
reviewing a summary judgment motion, we must (1) take as true all evidence
favorable to the nonmovant, and (2) indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life Accid. Ins.
Co. v. Knott, 128 S.W.3d
211, 215 (Tex. 2003).

Once a defendant moving for summary judgment establishes all of the
elements of an affirmative defense as a matter of law, the burden of production
shifts to the non-movant to defeat the defendant’s affirmative defense.  See EPGT Tex. Pipeline, L.P. v. Harris
Cnty. Flood Control Dist., 176 S.W.3d 330, 335 (Tex. App.—Houston [1st
Dist.] 2004, pet. dism’d).  The
non-movant’s response will defeat a facially valid affirmative defense if it
(1) demonstrates that the motion’s legal position regarding the affirmative
defense is unsound, (2) raises a fact issue on the elements of the affirmative
defense, or (3) sets forth a counter-affirmative defense to the affirmative
defense.[1]  See Tex.
R. Civ. P. 94; see also Walters v.
Cleveland Reg’l Med. Ctr.,
307 S.W.3d 292, 295 (Tex. 2010) (holding that when movant defendant proved
statute of limitations affirmative defense burden shifted to non-movant to
raise fact issue on lack of reasonable opportunity to discover and bring suit
within limitations period); G.C.
Bldgs., Inc. v. RGS Contractors, Inc., 188 S.W.3d 739, 742 (Tex. App.—Dallas 2006, no pet.)
(stating that if defendant establishes affirmative defense in a summary
judgment motion, “the burden then shifts to
the party opposing the motion to raise a genuine issue of material fact or show
the defendant’s legal position is unsound”); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 740 (Tex. App.—Fort
Worth 2005, no pet.); Resolution Trust Corp. v. Ammons, 836 S.W.2d 705,
710 (Tex. App.—Houston [1st Dist.] 1992, no writ) (stating that a plaintiff may
defeat defendant’s summary judgment “by raising a fact issue on each element of
its counter-affirmative defense”).  If the non-movant asserts a counter-affirmative
defense to overcome the established affirmative defense, the non-movant must
provide summary judgment evidence to raise a fact issue for each element of the
counter-affirmative defense.  See Rabe
v. Dillard’s Inc., 214 S.W.3d 767, 768 (Tex. App.—Dallas 2007, no pet.).

B.      Excluded Driver Affirmative
Defense

An
exclusion from coverage is an affirmative defense.  See Tex. Ins. Code Ann. § 554.002 (West
2009); see also Lone Star Heat Treating
Co. v. Liberty Mut. Fire Ins. Co., 233 S.W.3d 524, 526 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).  Therefore, Loya bore the burden of proving
that the parties agreed to the exclusion. See
McFadden v. Am.
United Life Ins. Co.,
658 S.W.2d 147, 148 (Tex. 1983) (stating that insurance company moving for
summary judgment did not satisfy its burden to demonstrate as matter of law
that claim was excluded under insurance policy).  As summary judgment evidence of the policy exclusion, Loya attached the
original excluded driver provision, each of the renewals, and Benitiz’s
testimony identifying her signature.  

The Hofstetters argue that we must strictly construe the policy against
the insurer, but that rule only applies if the policy is ambiguous.  An exclusion of coverage must be expressed in clear and
unambiguous language.  Nat’l Union
Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc., 811 S.W.2d
552, 555 (Tex. 1991).  Only
when a policy “is susceptible of more than one reasonable interpretation” does
a court “resolve the uncertainty by adopting the construction that most favors
the insured.”  Id.  The Hofstetters do not
allege any ambiguity in the policy.  The
policy clearly excludes coverage for any operations of the vehicle by Revuelta
and in capitalized letters informs the policyholder of the driver
exclusion.  Loya, therefore, satisfied its burden of proof as
the movant to demonstrate its affirmative defense that Revuelta was excluded
from coverage.  The burden of proof then
shifted to Hofstetters to raise a fact issue on that exclusion or to come
forward with proof of its own claim to negate that exclusion. 

C.      Fraudulent
Inducement

The Hofstetters next argue that Loya’s fraud made the
exclusion provision unenforceable.  The
elements of a fraudulent misrepresentation claim include proof by the plaintiff
that (1) the defendant made a material misrepresentation; (2) the
representation was false; (3) the defendant knew the representation was false
when made or made it recklessly without any knowledge of the truth and as a
positive assertion; (4) the defendant made the representation with the
intention that it should be acted upon; (5) the representation was in fact
justifiably relied upon; and (6) damage to the plaintiff resulted.  See Grant Thornton LLP v. Prospect High Income Fund,
314 S.W.3d 913, 923 (Tex. 2010); see
also Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,
51 S.W.3d 573, 575 (Tex. 2001).  As a general rule, a party is not bound by a
contract procured by fraud.  Formosa Plastics Corp. USA v. Presidio Eng’rs
& Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998); see also Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 179 (Tex. 1997).

1.       Misrepresentations
to Revuelta

Revuelta testified that he believed the policy covered his
conduct while driving his mother’s car and that someone at Loya told him he was
covered.  Revuelta stated that:


Q.  Did anyone at Fred Loya Insurance, when you
went to make a payment, ever tell you were on the policy?

 

A.  Yes. 
They told me I was on it, but then I was taken off.

 

Q.  Was it before the accident with the
Hofstetters that you were told you were taken off? 

 

A.  No.  It
was when that happened, right after it happened.

 

Q.  After it happened, you were told you were not
on the policy?

 

A.  Yea.

 

This testimony constitutes the only
evidence of a misrepresentation of his status as an excluded driver and amounts
to some evidence that Loya made a misrepresentation to Revuelta.  Granted, Revuelta testified shortly after the
above exchange that:

Q:  Okay. 
When you went to make a payment, did anyone there tell you that you were—that
it was your policy or that you were on the policy?

 

A:  No.  I
guess they just accepted a payment, and that’s it.  I guess they just looked at it as a normal
transaction.  

 

This
second statement contradicts his other deposition testimony, but that conflict
may create a fact issue.  See Wheeler v. Yettie Kersting Mem’l Hosp.,
866 S.W.2d 32, 50 (Tex. App.—Houston [1st Dist.] 1993, no writ) (stating
internal inconsistencies in deposition testimony may raise fact issue at
summary judgment).  Reading the evidence
in the light most favorable to the Hofstetters as the nonmovants, they
presented “more than a scintilla
of evidence” establishing that a misrepresentation was made to Revuela.  See Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004).  

           Revuelta, however, was not a party to the
insurance contract signed by his mother. 
A false representation made indirectly to a third party and later relied
on by the defrauded party may constitute fraud under certain
circumstances.  See BP Am. Prod. Co. v. Marshall, 288 S.W.3d 430, 444–45 (Tex.
App.—San Antonio 2008, pet. granted) (holding misrepresentations made to one
sibling acting as agent for all siblings constituted misrepresentations to all
siblings).  “[A] person who makes a
misrepresentation is liable to the person or class of persons the maker intends
or ‘has reason to expect’ will act in reliance upon the
misrepresentation.”  Ernst & Young, 51 S.W.3d at 578.  “Even an obvious risk that a
misrepresentation might be repeated to a third party is not enough to satisfy
the reason-to-expect standard; rather, the alleged fraudfeasor must ‘have
information that would lead a reasonable man to conclude that there is an especial likelihood that it will
reach those persons and will influence
their conduct.’”  Id. at 580 (quoting Restatement (Second)
of Torts § 531 cmt. d (1977)) (emphasis added). 


To show indirect misrepresentation, the Hofstetters must
show Loya intended that the statement made to Revuelta reach Benitiz and induce
her to sign the excluded driver provision.[2]  A statement made to a son paying his mother’s
car insurance bill would have an especial likelihood to reach the mother and
influence her conduct regarding that insurance. 
The Hofstetters, however, did not argue here or at the trial court that
the alleged misrepresentation to Revuelta was communicated to Benitiz or that
Benitiz relied on that misrepresentation in signing the endorsement.  Instead of indirect misrepresentation, the
Hofstetters argued that both mother and son believed the car to be insured
while driven by Revuelta.  Thus, they
have not raised an issue on indirect misrepresentation to Benitiz through
misrepresentations made to Revuelta.

2.       Misrepresentations
to Benitiz

The Hofstetters next assert that they raised a fact issue
that Loya mislead Benitiz into believing that the policy provided coverage to
her son because the car itself was covered by the policy.  They assert Benitiz does not read, write or
understand English and was dependent on Loya to explain the English policy to
her.  Benitiz testified that Loya explained
the policy in Spanish when she purchased the policy and at each renewal.  When Loya asked who she believed to be insured
on the policy, she replied, “Well, I was — it was only me.”  She stated that her son “was not named on the
policy,” but at the same time stated that the policy covered the car if she
gave him permission to drive it.  In
follow-up questions, she testified:

Q.  And did you
understand that the insurance did not apply to your son?

 

A.  Yes.

 

In
response to questions from the Hofstetters, she testified: 

Q.  It was your understanding, based on what Fred
Loya Insurance told you, that if your children drove those cars they were
covered for collisions they got in. Correct?

 

A.  No.

 

Q.  Were you given an opportunity to ask
questions about what you were signing?

 

A. 
Yes.

 

Q.  And did you understand what you were signing?

 

A:  Yes

 

Q.  And you understood that your son Revuelta was
not covered by these insurance policies?

 

A.  Yes.

 

Benitiz also testified, however, that
she reported Revuelta’s accident to Loya “not because I knew my son was insured
but because my car was insured by the insurance.”  Her testimony when read in its most favorable
light, and giving all reasonable inferences to the nonmovant, is that she believed
her car was covered regardless of who was driving it. 

Benitiz’s
testimony does not raise a fact issue on fraud. 
Fraud requires proof of an affirmative misrepresentation, not simply a
misunderstanding by a party.  See Orion Ref. Corp. v. UOP, 259 S.W.3d 749, 771–72 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied) (stating misunderstanding and other
evidence do not amount to actionable misrepresentations).  The
Hofstetters did not offer any summary judgment evidence that Loya made an
affirmative misrepresentation to Benitiz. 
She never testified regarding the substance of the explanations given by
Loya about the terms of her policy.  The
source of her misunderstanding was not addressed in her deposition.  Benitiz may have believed
that the exclusion only applied if Revuelta did not have her consent to drive
or believed that the policy covered the car and not the driver.  Her belief is immaterial unless it was based
on a misrepresentation by Loya. 

3.       Witness Credibility

The
Hofstetters contend that Benitiz’s deposition testimony is not credible because
of internal inconsistencies and conflicts with Revuelta’s testimony and Loya’s
documents.  They rely on Casso v. Brand, 776 S.W.2d 551, 558
(Tex. 1989), which stated, “If the credibility of the affiant or deponent is
likely to be a dispositive factor in the resolution of the case, then summary
judgment is inappropriate.”  Casso dealt with the testimony of an
interested witness and the requirement that their testimony be “clear,
positive, and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.”  See Tex. R. Civ. P. 166a(c); Casso, 776 S.W.2d at 558; CEBI Metal Sanavi Ve Ticaret A.S. v. Garcia,
108 S.W.3d 464, 465 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding
testimony of workplace supervisor not sufficient to support summary judgment
when his negligence was at issue, and movant presented no other evidence of
facts surrounding accident).  

Benitiz is
not an interested witness to the suit between the Hofstetters and Loya.  Even if we consider her to be an interested
witness indirectly, that interest favors the Hofstetters who are suing on her
claims under the policy and seeking to collect damages from Loya instead of
from her and her son.  

More
importantly, Loya established the existence of the exclusion even without
Benitiz’s testimony.  An affidavit from
Loya’s record’s custodian attested to the excluded driver endorsement in the
original policy and the three renewals, one signed after the accident.  The Hofstetters did not object to that evidence.  It then became their burden to raise a fact
issue that Loya procured the policy by fraud. 
See Black v. Victoria Lloyds Ins.
Co., 797 S.W.2d 20, 25 (Tex. 1990) (stating that policyholder successfully
raised fact issue on insurance company’s summary judgment motion arguing policy
exclusion).  Even if we only give weight
to the portion of Benitiz’s testimony that supports the Hofstetters, i.e. the
testimony that she believed the policy covered the car while Revuelta drove it,
they still failed to present evidence of any misrepresentation by Loya.

The Hofstetters contend that other evidence in the record
undermines the credibility of Benitiz’s testimony and raises a fact issue on
fraud.  The remaining evidence they rely
on, however, fails to demonstrate any affirmative misrepresentation by Loya to
Benitiz on the excluded driver provision. 
They assert that Loya documents raise a fact issue.  First, they allege that the policy shows
evidence of other fraud in that Loya charged a premium on a fourth car.  Taking this evidence as true, the inclusion
of an extra car does not equate to a misrepresentation by Loya regarding the
excluded driver provision.  Second, they
assert that Loya failed to adjust or discount Benitiz’s premium to reflect the
excluded driver provision.  The cases
relied on by the Hostetters do not state a rule requiring a discount in
exchange for an excluded driver endorsement, nor can we find any cases creating
such a rule.  See Wright v. Rodney D. Young Ins. Agency, 905 S.W.2d 293, 296
(Tex. App.—Fort Worth 1995, no writ); see
also Emmert v. Progressive Cnty. Mut. Ins. Co., 882 S.W.2d 32, 34 (Tex.
App.—Tyler 1994, writ denied).  Neither
of these arguments undermines Benitiz’s testimony or raises a fact issue as to
fraudulent inducement on the excluded driver provision.

The Hofstetters also assert that inconsistencies between
Benitiz and Revuelta’s testimony raise a fact issue on fraud and Benitiz’s
credibility.  Even if we assume the
testimony to be inconsistent, neither deposition demonstrates an actionable
misrepresentation.  Both Benitiz and
Revuelta believed that the Loya policy covered the accident with the
Hofstetters.  But the source of Benitiz’s
misunderstanding was never identified in the summary judgment record and the
only evidence of Loya’s misrepresentations is the indirect statement to
Revuelta.    

The Hofstetters finally argue that the excluded driver
endorsement is contrary to the Texas Motor Vehicle Safety Responsibility Act because
it sends drivers onto the road who do not know that they are uninsured.  See
generally Tex. Transp. Code Ann. §
601.001 et seq. (West 1999). 
The purpose of the Texas Motor Vehicle Safety Responsibility
Act “was to protect potential claimants from losses resulting from automobile
accidents by requiring that all drivers obtain automobile liability
insurance.”  Wright, 905 S.W.2d at 295.  The act does not require an insured to notify
family members that they have been excluded from coverage on a policy nor does
it prohibit insurers from excluding drivers with their insured’s approval.  Numerous courts have held that the named
driver exclusion is not against Texas public policy.  Id.
at 296;  Zamora v. Dairyland County
Mut. Ins. Co., 930 S.W.2d 739, 741 (Tex. App.—Corpus Christi 1996, writ
denied); Valdez v. Safeway Managing Gen. Agency for State and Cnty. Mut.
Fire Ins. Co., No. 01-94-00196-CV,
1995 WL 71414, at *2 (Tex. App.—Houston [1st Dist.] Feb. 23, 1995, no writ)
(not designated for publication); W. Alliance Ins. Co. v. Albarez,
380 S.W.2d 710, 715 (Tex. Civ. App.—Austin 1964, writ ref’d n.r.e.). 




 

Conclusion

          Loya established conclusive proof of
its affirmative defense of exclusion under the auto insurance policy and the
Hofstetters failed to raise a fact issue on their claim of fraud.  We overrule the Hofstetter’s sole issue on
appeal and affirm the judgment of the trial court.  

 

 

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.











[1]           A
counter-affirmative defense does not seek to overcome the affirmative defense
by denying the affirmative defense, but seeks to establish an independent
reason why the affirmative defense does not bar the plaintiff’s claim.  See Tex.
Beef Cattle Co. v. Green, 921 S.W.2d 203, 212 (Tex. 1996) (stating that
affirmative defenses are matters of avoidance and defining such defenses).  When a defendant moves for summary judgment
based on an affirmative defense, the plaintiff can counter with its own
“counter-affirmative defense” to that defense.





[2]           Benitiz renewed the policy and the
excluded driver provision twice before the accident.  Therefore, a statement made after she bought
the policy could still induce reliance in the renewals.